THE PEOPLE *ex rel.* EDITH NAUGHTON *et al.*, Plaintiffs-Appellants, *v.* THE DEPARTMENT OF PUBLIC AID *et al.*, Defendants-Appellees.

(No. 56733;

First District (2nd Division)—May 15, 1973.

44

Sheldon H. Roodman, Community Legal Counsel, of Chicago, for appellants.

William J. Scott, Attorney General, of Chicago, for appellees.

Mr. PRESIDING JUSTICE STAMOS delivered the opinion of the court:

This is an appeal from an order striking and dismissing Counts II and III of plaintiffs' complaint. Those counts sought a writ of mandamus and declaratory relief requiring defendants to abandon their practice of issuing public assistance payments as of the date of the approval of an application for assistance and to commence issuance of the payments retroactive to the date of application. The sole issue raised on appeal is whether each or any of the plaintiffs had standing to seek the extraordinary relief of mandamus and declaratory judgment.

This action commenced with a one-count complaint by plaintiff Naughton which sought review pursuant to the Administrative Review Act (Ill. Rev. Stat. 1971, ch. 110, par. 264 *et seq.*) of a decision by the Director of the Illinois Department of Public Aid denying her application for public assistance payments retroactive to the date of her application. The Cook County Department of Public Aid had approved her application for welfare payments, but had commenced payments as of the date of approval. All administrative remedies were exhausted prior to seeking judicial review. Naughton subsequently amended her complaint with Count II (writ of mandamus) and Count III (declaratory relief on behalf of the class of public assistance applicants), seeking to compel the Department henceforth to issue all welfare payments retroactive to the date of recipients' applications. Joining in Count II were plaintiffs Harris and Hester. Harris was a recipient of disability payments who had also been denied payments retroactive to the date of her application. She had not exhausted her administrative appeals. Hester joined the action in the capacity of a citizen-taxpayer; she had not applied for public assistance. Count III was joined by Harris, but not by Hester. Defendants moved to strike and dismiss Counts II and III and plaintiff Naughton moved for summary judgment on Count I.

Both motions were granted by the trial court. Plaintiffs brought this appeal from the order dismissing Counts II and III, but defendants chose not to appeal from the order granting plaintiff Naughton summary judgment on Count I.

Both in the trial court and on appeal defendants have ascribed separate rationales for the dismissal of each individual plaintiff. With regard to Naughton, a public aid applicant who had exhausted all administrative remedies, it is asserted that her status as an applicant precluded any resort to judicial remedies other than appeal for individual relief pursuant to the Administrative Review Act. With regard to Harris, a public assistance applicant who had not exhausted all administrative remedies, it is asserted that a judicial remedy is precluded by her failure to exhaust. With regard to Hester, who joined the complaint as a citizen-taxpayer, it is asserted that she lacked the interest and affinity requisite for standing to maintain an action for a writ of mandamus. We will consider each of these contentions separately.

■■ Defendants contend that section 2 of the Administrative Review Act (Ill. Rev. Stat. 1971, ch. 110, par. 265) and section 11—8.7 of the Public Aid Code (Ill. Rev. Stat. 1971, ch. 23, par. 11—8.7) limited plaintiff Naughton to review pursuant to the Administrative Review Act. Those statutes provide in pertinent part:

> "§ 2 (Scope of Act.) This Act shall apply to and govern every action to review judicially a final decision of any administrative agency where the Act creating or conferring power on such agency, by express reference, adopts the provisions of this Act. In all such cases, any other statutory, equitable or common law mode of review of decisions of administrative agencies heretofore available shall not be employed after the effective date hereof." Ill. Rev. Stat. 1971, ch. 110, par. 265.

> "§ 11—8.7. Judicial Review. The provisions of the Administrative Review Act, approved May 8, 1945, as amended, and the rules adopted pursuant thereto, shall apply to and govern all proceedings for the judicial review of final administrative decisions of the Illinois Department on appeals by applicants or recipients under Articles III, IV or V. The term 'administrative decision' is defined as in Section 1 of the 'Administrative Review Act'." Ill. Rev. Stat. 1971, ch. 23, par. 11—8.7.

It is clear from the language of these statutes that, if the relief sought in Counts II and III of the amended complaint can be characterized as "judicial review of final administrative decisions," relief which can be secured only by appeal pursuant to the Administrative Review Act, then

Naughton was properly dismissed as to those counts. The term, "administrative decision" is defined by section 1 of the Administrative Review Act (Ill. Rev. Stat. 1971, ch. 110, par. 264) as follows:

\* \* \*

" 'Administrative decision' or 'decision' means any decision, order or determination of any administrative agency rendered in a particular case, which affects the legal rights, duties or privileges of parties and which terminates the proceedings before the administrative agency.

\* \* \*

The term 'administrative decision' or 'decision' does not mean or include rules, regulations, standards, or statements of policy of general application issued by an administrative agency to implement, interpret, or make specific the legislation enforced or administered by it unless such a rule, regulation, standard or statement of policy is involved in a proceeding before the agency and its applicability or validity is in issue in such proceeding, nor does it mean or include regulations concerning the internal management of the agency not affecting private rights or interests."

There is no dispute that the thrust of Naughton's complaint in Counts II and III is an attack upon those Department of Public Aid regulations which preclude welfare payments retroactive to the date of a recipient's application. Applying the above statute, it follows that Counts II and III were appeals from an "administrative decision" only if the contested regulations were "involved in a proceeding before the agency and its applicability or validity [was] in issue in such proceeding." The issue devolves to one of statutory construction.

■■ We believe that the phrase, "involved in a proceeding before the agency" should be construed as "involved in a *pending* proceeding before the agency." Such a construction observes the apparent legislative intent *to* preclude litigants in administrative proceedings, where the validity or application of a rule or regulation is being challenged, from prematurely abandoning their challenge in the agency in order to reassert it in the courts. Tactics of that nature are wasteful of administrative resources and avoid imminent administrative determinations which might well obviate the need for other legal relief. Such a construction is also harmonious with three well established tenets of administrative law. First, whereas a contrary construction would effectively prevent a public assistance applicant from seeking a generally binding judicial ruling on the constitutionality or validity of a rule or regulation promul-

gated by the Department of Public Aid, abundant Illinois authority supports the right of one to challenge the validity or constitutionality of a statute *on its face* without resort to related administrative remedies. (*Bright v. City of Evanston*, 10 Ill.2d 178, 139 N.E.2d 270, *Suburban Ready-Mix Corp. v. Village of Wheeling*, 25 Ill.2d 548, 185 N.E.2d 665.) Although these cases typically involve zoning matters, their expressed rationale is equally applicable to non-zoning issues. Nor is their reasoning unique to challenges to statutes and ordinances rather than to administrative rules and regulations. Regulations of administrative agencies, passed pursuant to statutory authority, have the force and effect of statute. (*Williams v. New York Central R.R.*, 402 Ill. 494, 501, 84 N.E.2d 399; *Margolin v. Public Mutual Fire Ins. Co.*, 4 Ill.App.3d 661, 666, 281 N.E.2d 728.) Second, one need not engage in patently useless or foredoomed administrative appeals. (*Herman v. Village of Hillside*, 15 Ill.2d 396, 408, 155 N.E.2d 47; *Westfield v. City of Chicago*, 26 Ill.2d 526, 187 N.E.2d 208.) Pursuant to its own written regulations, the Department of Public Aid has consistently denied retroactive welfare payments and that practice has been upheld at the highest level of administrative review. To expect each and every public assistance applicant to engage in the time consuming and expensive administrative review process to secure a predictable outcome would impose a ritualistic and unnecessary burden upon those applicants. Third, it has been held that one is not limited to administrative relief if the dispute involves only a purely legal issue. (*Bank of Lyons v. County of Cook*, 13 Ill.2d 493, 495, 150 N.E.2d 97; *Nolan v. Fitzpatrick*, 9 N.J. 477, 89 A.2d 13.) This rule is consonant with the underlying rationale for requiring exhaustion of administrative remedies prior to seeking judicial relief. Administrative agencies are usually composed of individuals who bring to their duties prior expertise in the regulated field or who have developed such expertise during their period of service. Complicated and technical issues of fact can then be determined in the first instance by expert judgment. However, the narrow range of expertise which renders administrative agencies uniquely qualified to address themselves to fact issues often leaves them uniquely unqualified to resolve purely legal issues. The case at bar is illustrative. We fail to see how any reviewing body within the Department of Public Aid is more qualified than the trial court below to determine the validity of the regulations which have been challenged.

We therefore hold that it was the intent of our legislature that the phrase, "involved in a proceeding before the agency" means "involved in a *pending* proceeding before the agency." In the case at bar there was no pending proceeding by plaintiff Naughton challenging the contested regulations at the time she amended her complaint with Counts

II and III. Thus, her amended action did not seek review of an "administrative decision," and she was not limited solely to administrative remedies and review pursuant to the Administrative Review Act. It was error to dismiss Counts II and III as to plaintiff Naughton.

■■ The only difference between the postures of plaintiff Naughton and of plaintiff Harris is that the former exhausted all administrative remedies and the latter did not. This difference is of no consequence under the facts at bar and as we have interpreted the relevant statutes. No proceeding by plaintiff Harris challenging the contested regulations was pending at the time she joined in Counts II and III. Thus, her action did not seek a review of an "administrative decision," and she was not limited solely to administrative remedies and review pursuant to the Administrative Review Act. In addition, the three tenets of administrative law which we discussed in support of our statutory construction, apply directly to plaintiff Harris to relieve her of her obligation to fully exhaust her administrative remedies. It was error to dismiss Counts II and III as to plaintiff Harris.

■■ Plaintiff Hester joined Count II (writ of mandamus) as a citizen-taxpayer. The sole issue presented by defendants' challenge to her standing is whether she had sufficient interest in the subject matter to maintain a petition for writ of mandamus. (*Retail Liquor Dealers Protective Ass'n v. Schreiber*, 382 Ill.2d 454, 47 N.E.2d 462; *People ex rel. Thomas v. Board of Education*, 40 Ill.App.2d 308, 188 N.E.2d 237.) We believe that this issue is controlled by the combined authority of *People ex rel. Sanaghan v. Swalec*, 22 Ill.App.2d 374, 161 N.E.2d 352; and *Figures v. Swank*, 128 Ill.App.2d 211, 263 N.E.2d 599. In *Swalec* the plaintiff, also a citizen-taxpayer, brought a petition for writ of mandamus against the trustees of the Village of Calumet Park, praying that the trustees be ordered to appoint a board of fire and police commissioners pursuant to the allegedly mandatory provisions of a statute. The defendants argued that the pertinent statute was designed to protect firemen and policemen and that the plaintiff, who did not claim to be an actual or potential member of those two groups, had been deprived of no benefits conferred by the statute and thus had no standing to bring the action. The court cited with approval the case of *Payne v. Staunton*, 55 W.Va. 202, 46 S.E. 927, and elaborated as follows:

> "We agree with the reasoning of that court and think it is applicable to our situation. The purpose of art. 14 of ch. 24 is to promote the efficiency and capability of the police and fire departments; the application and rentention of qualified persons is encouraged. People ex rel. Cadell v. Board of Fire & Police Com'rs, 345 Ill.App. 415. For example, it provides for appoint-

ment only after an examination (§ 14—6) and for removal only after a hearing on charges (§ 14—11). The public has a direct interest in the quality of its policemen and firemen. Where there is a public interest a citizen may bring mandamus proceedings. Retail Liquor Dealers' Protective Ass'n of Illinois v. Schreiber, 382 Ill. 454." (22 Ill.App.2d at 377.)

Whether or not the disbursement of public assistance payments is a matter concerning public interests and rights was determined in *Figures v. Swank, supra.* At issue was whether the following portion of section 12—4.11 of the Public Aid Code was mandatory or permissive:

"If recipients [of financial aid] can obtain adequate shelter only if a security deposit is given the landlord, the Department may furnish one month's rent as a security deposit."

The court recognized the rule of construction that the word "may" in a statute will be construed to mean "shall" whenever "the public interest and right are concerned or a public duty is imposed upon public officers and the public or third persons have a claim de jure that the power shall be exercised." (128 Ill.App.2d at 216.) To the contention of the defendants that the payment of security deposits is of interest only to the individual landlords and public assistance recipients, and is not a matter of public interest, the court responded as follows (128 Ill.App.2d at 217):

"[T]he enunciated purpose and pervasive theme of the Public Aid Code is to "assist in the alleviation and prevention of poverty and thereby to protect and promote the health and welfare of all the people of this state." (Ill. Rev. Stat. 1967, ch. 23, § 1—1, par 1.) Prior to 1967, this section read, "assistance and services for persons who are unable to provide themselves with the minimum standard of living compatible with decency and health are hereby declared to be special matters of the public concern and a necessity in promoting the public health and welfare." (Ill. Rev. Stat. 1965, ch. 23, § 1—1.) Since payments of security deposits have been deemed necessary to effectuate these purposes (Report of the Legislative Commission on Low Income Housing, April 10, 1967) and to provide recipients "a livelihood compatible with health and well-being for persons eligible for financial aid," (Ill. Rev. Stat. 1967, ch. 23, § 12—4.11) we believe it is in the public interest that these payments be made where authorized by statute."

This language is equally appropriate to the issue and the interests at bar. We hold that the proper administration and disbursement of public assistance payments are matters of sufficient public interest and concern

to confer standing on a citizen-taxpayer to seek a writ of mandamus to compel payments in strict accordance with authorizing statutes. It was error to dismiss Count II as to plaintiff Hester.

This cause is reversed and remanded to the trial court with instructions to reinstate Counts II and III of the amended complaint as to all three plaintiffs and for further proceedings consistent with this opinion. We express no opinion as to the merits of plaintiffs' contention that the regulations and practices of the Department of Public Aid contravene provisions of the Illinois Public Aid Code.

Reversed and remanded with directions.

LEIGHTON and HAYES, JJ., concur.