(No. 46012.—

THE PEOPLE *ex rel.* EDITH NAUGHTON *et al.*, Appellees, v. HAROLD O. SWANK, Director of Department of Public Aid, *et al.*, Appellants.

*Opinion filed September 17, 1974.*

William J. Scott, Attorney General, of Chicago (Jerrald B. Abrams, Alan E. Grischke, and George L. Grumley, Assistant Attorneys General, of counsel), for appellants.

Sheldon Roodman and Thomas Grippando, of the Legal Assistance Foundation of Chicago (Jane G. Stevens and James D. Weill, of counsel), for appellees.

MR. JUSTICE SCHAEFER delivered the opinion of the court:

On January 9, 1970, Edith Naughton applied for public assistance under article IV of the Illinois Public Aid Code, "Aid to Families with Dependent Children" (Ill. Rev. Stat. 1973, ch. 23, par. 4–1 *et seq.*), on behalf of herself and her four minor children. She was interviewed on that day and her case was assigned to a member of the field staff for investigation, including a home visit, to determine her eligibility for assistance. Her husband's last paycheck had been received on January 2, 1970. At that time he was at home, having been admitted to bail on a criminal charge. From January 4 until February 4, 1970, he was in custody in the Cook County jail. On the latter date it was determined that he was mentally incompetent to stand trial, and he was committed to a mental institution. On that date the investigator recommended that monthly assistance ·be provided in the amount of $269.38. Mrs. Naughton was given $25 in cash on February 4, and a check for the balance of the assistance was mailed to her on February 11. No assistance was provided for the period from the date of application to the date of determination of eligibility.

On February 25, 1970, Mrs. Naughton appealed from the determination that awarded her assistance prospectively only from February 4. Before a hearing officer of the Illinois Department of Public Aid her attorney challenged the validity of the regulation (Illinois Department of Public Aid Categorical Assistance Manual, ch. 8250, topic 8255.1) which provided that (with certain exceptions the applicability of which is not argued) assistance may be awarded prospectively only from the date of the determination of eligibility. The contention was that this regulation was invalid because Mrs. Naughton met the conditions for eligibility when she applied for assistance on January 9, 1970, and the statute provides: "Financial aid in meeting basic maintenance requirements for a livelihood compati-

ble with health and well-being shall be given under this Article to or in behalf of families with dependent children who meet the eligibility conditions ***." (Ill. Rev. Stat. 1969, ch. 23, par. 4—1.) After evidence was heard, the hearing officer recommended that the initial decision be affirmed, and on July 10, 1970, the Director of the Department approved that recommendation.

On August 10, 1970, plaintiff filed her complaint under the Administrative Review Act (Ill. Rev. Stat. 1973, ch. 110, par. 264 *et seq.*), in the circuit court of Cook County, and on September 4, 1970, the defendants filed their answer, which, as required by the Act, consisted of "a certified copy of the entire record of proceedings under review, including such evidence as may have been heard by [the administrative agency] and the findings and decisions made by it." Ill. Rev. Stat. 1973, ch. 110, par. 272(b).

So matters stood, without action on behalf of the plaintiff, until January 7, 1971, when an amended complaint was filed. This complaint consisted of three counts. Count I reiterated the allegations of the plaintiff's pending complaint under the Administrative Review Act, and the answer previously filed was allowed to stand as the answer to that count.

Counts II and III, however, introduced new parties plaintiff and sought relief foreign to the Administrative Review Act. Count II was an original action for a writ of *mandamus*. Joined with Mrs. Naughton as relators were Rosalind Hester and Ernestine Harris, who were described as "citizens, residents, and taxpayers of the State of Illinois and the County of Cook." This count alleged Mrs. Naughton's status as a recipient of aid and described her pending administrative review action. It also alleged that Mrs. Ernestine Harris had "applied for Disability Assistance [under Article III of the Illinois Public Aid Code, "Aid to the Aged, Blind or Disabled," Ill. Rev. Stat. 1973, ch. 23, par. 3—1 *et seq.*] at the Cook County Department of Public Aid on or about November 1, 1970, and met all

the eligibility conditions for disability assistance at that time. Her application was not approved until December, 1970, and she was granted assistance for the month of December, but was denied assistance for November, 1970, which was requested." The other relator, Rosalind Hester, was identified only as a citizen, resident and taxpayer of the State of Illinois. The relief sought in count II was that "the Court issue a Writ of Mandamus forthwith directing the defendant Swank and the Illinois Department of Public Aid to promulgate a regulation implementing Sections 3—1, 4—1, and 6—1 of the Illinois Public Aid Code, to the effect that applicants for public assistance programs in the State of Illinois shall be provided assistance from the date of application if they meet the eligibility conditions at the time of application," and that the relators Naughton and Harris be awarded assistance retroactively to the dates of their applications.

Count III was described as a class action brought by Mrs. Naughton and Mrs. Harris "individually and on behalf of all other persons similarly situated," a class alleged to be "composed of all persons who apply for public assistance in the State of Illinois, and who meet the eligibility conditions at the time of application, but who do not receive public assistance from the date of application." This count also charged that the regulations of the Illinois Department of Public Aid which provided for assistance only from the date of determination of eligibility were invalid because they violated sections 3—1, 4—1 and 6—1 of the Illinois Public Aid Code (Ill. Rev. Stat. 1973, ch. 23, pars. 3—1, 4—1, and 6—1), as well as certain Federal regulations of the United States Department of Health, Education and Welfare (45 C.F.R. sec. 233.20 (1973)), and the equal protection clause of the fourteenth amendment to the Constitution of the United States. The relief prayed for in count III was "a declaratory judgment that the failure of the defendants to provide public assistance to plaintiffs from the date of application when said

applicants meet the eligibility conditions at that time, is contrary to [the sections of the Illinois Public Aid Code mentioned above], and/or contrary to 45 C.F.R. Section 233.20(a)(1)(2)(iii), and/or in violation of equal protection of the laws as guaranteed by the fourteenth amendment to the United States Constitution."

On September 10, 1971, the trial court entered judgment for the plaintiff on count I, holding that "the policy of the Illinois Department of Public Aid that the effective date of eligibility for public aid in Illinois is the date of determination by the County Department of Public Aid is contrary to the plain meaning and intent of Chapter 23, sec. 4—1, Ill. Rev. Stat.," and remanding Mrs. Naughton's case to the Department "for a decision consistent with this Order." No appeal was taken from that judgment, and its correctness is not before us.

On the same day the trial court granted the defendants' motion to dismiss counts II and III. The plaintiffs appealed from that order and the appellate court reversed and remanded to the circuit court with instructions to reinstate those counts of the amended complaint. (*People ex rel. Naughton v. Department of Public Aid* (1973), 12 Ill. App. 3d 43.) We allowed the defendants' petition for leave to appeal.

The Administrative Review Act defines the term "administrative decision" as follows:

" 'Administrative decision' or 'decision' means any decision, order or determination of any administrative agency rendered in a particular case, which affects the legal rights, duties or privileges of parties and which terminates the proceedings before the administrative agency. *** The term 'administrative decision' or 'decision' does not mean or include rules, regulations, standards, or statements of policy of general application issued by an administrative agency to implement, interpret, or make specific the legislation enforced or administered by it *unless such a rule, regulation, standard or statement of policy is involved in a proceeding before the agency and its applicability or validity is in issue in such proceeding*

***." (Emphasis supplied.) Ill. Rev. Stat. 1969, ch. 110, par. 264.

The Act then provides:

"This Act shall apply to and govern every action to review judicially a final decision of any administrative agency where the Act creating or conferring power on such agency, by express reference, adopts the provisions of this Act. In all such cases, any other statutory, equitable or common law mode of review of decisions of administrative agencies heretofore available shall not be employed after the effective date hereof.

Unless review is sought of an administrative decision within the time and in the manner herein provided, the parties to the proceeding before the administrative agency shall be barred from obtaining judicial review of such administrative decision." Ill. Rev. Stat. 1969, ch. 110, par. 265.

Interpreting this language as it applies to the plaintiff Naughton, the appellate court said:

"We believe that the phrase, 'involved in a proceeding before the agency' should be construed as 'involved in a *pending* proceeding before the agency.' Such a construction observes the apparent legislative intent to preclude litigants in administrative proceedings, where the validity or application of a rule or regulation is being challenged, from prematurely abandoning their challenge in the agency in order to reassert it in the courts. ***

We therefore hold that it was the intent of our legislature that the phrase, 'involved in a proceeding before the agency' means 'involved in a *pending* proceeding before the agency.' In the case at bar there was no pending proceeding by plaintiff Naughton challenging the contested regulations at the time she amended her complaint with Counts II and III. Thus, her amended action did not seek review of an 'administrative decision,' and she was not limited solely to administra-

tive remedies and review pursuant to the Administrative Review Act. It was error to dismiss Counts II and III as to plaintiff Naughton." 12 Ill. App. 3d at 46-48.

And with respect to the plaintiff Harris, the appellate court said:

"The only difference between the postures of plaintiff Naughton and of plaintiff Harris is that the former exhausted all administrative remedies and the latter did not. This difference is of no consequence under the facts at bar and as we have interpreted the relevant statutes. No proceeding by plaintiff Harris challenging the contested regulations was pending at the time she joined in Counts II and III. Thus, her action did not seek a review of an 'administrative decision,' and she was not limited solely to administrative remedies and review pursuant to the Administrative Review Act." 12 Ill. App. 3d at 48.

The appellate court has thus held in the case of the plaintiff Harris that an applicant for aid may, if he so desires, disregard the procedures which the General Assembly has provided in the Public Aid Code for internal appeal and review within the Department of Public Aid (Ill. Rev. Stat. 1969, ch. 23, pars. 11—8 through 11—8.6). And in the case of the plaintiff Naughton the appellate court has held that an applicant for relief who is dissatisfied with the results of his internal administrative appeal may review that determination by any form of action he chooses, despite the provisions of section 2 of the Administrative Review Act (Ill. Rev. Stat. 1969, ch. 110, par. 265) and section 11—8.7 of the Public Aid Code (Ill. Rev. Stat. 1969, ch. 23, par. 11—8.7).

The effect of these two determinations largely nullifies the Administrative Review Act. That Act was not intended to eliminate the requirement that administrative remedies be exhausted, or to establish an additional

method for the review of administrative decisions. Rather it was designed to channel into a single procedure the judicial review of the decisions made by administrative agencies in particular cases.

*Chicago Welfare Rights Organization v. Weaver* (1973), 56 Ill.2d 33, like the present case, involved an effort to circumvent the provisions of the Administrative Review Act by a class action for declaratory judgment, injunction and other relief. (5 Ill. App. 3d 655, at 656.) This court held that these actions could not be maintained in the face of the Administrative Review Act, saying:

> "Section 11–8.7 provides that judicial review of administrative decisions of the Department shall be governed by the Administrative Review Act. (Ill. Rev. Stat. 1969, ch. 23, par. 11–8.7.) The Administrative Review Act provides:
>
>> 'This Act shall apply to and govern every action to review judicially a final decision of any administrative agency where the Act creating or conferring power on such agency, by express reference, adopts the provisions of this Act. In all such cases, any other statutory, equitable or common law mode of review of decisions of administrative agencies heretofore available shall not be employed ***.' Ill. Rev. Stat. 1969, ch. 110, par. 265.
>
> We see nothing in the facts of this case that would justify a disregard of this plain provision. If this action can be maintained in the face of the statutory prohibition, it is difficult to conceive of any area in which the Administrative Review Act can operate. *Cf. People ex rel. Chicago and North Western Ry. Co. v. Hulman,* 31 Ill.2d 166 (1964); *Johnson v. Ogilvie,* 47 Ill.2d 506 (1970)." 56 Ill.2d 33, 38-39.

The appellate court sustained the right of the plaintiff Hester, who was identified only as a "citizen, resident and taxpayer," to institute a *mandamus* action upon "the

combined authority of *People ex rel. Sanaghan v. Swalec,* 22 Ill. App. 2d 374, 161 N.E.2d 352; and *Figures v. Swank,* 128 Ill. App. 2d 211, 263 N.E.2d 599." (12 Ill. App. 3d 43, 48.) But the *Swalec* case did not at all involve the action of an administrative agency, and the *Figures* case which was cited by the appellate court was itself a proceeding under the Administrative Review Act by an applicant for aid. (In *People ex rel. Newdelman v. Weaver* (1972), 50 Ill.2d 237, the judgment of the appellate court in a separate *mandamus* action brought by Mrs. Figures and others was vacated.) Neither of the cases relied upon by the appellate court supports the result it reached.

To support that result the plaintiffs also advance the following cases:

*County of Cook v. Ogilvie* (1972), 50 Ill.2d 379;

*People ex rel. Cermak v. Emmerson* (1926), 323 Ill. 561;

*People ex rel. Faulkner v. Harris* (1903), 203 Ill. 272;

*County of Pike v. People ex rel. Metz* (1849), 11 Ill. 202.

*County of Cook v. Ogilvie* involved a dispute between the County Department of Public Aid and the State Department of Public Aid as to the amount of money the County Department was legally entitled to receive for distribution to recipients of public welfare. In the *Cermak* case the chairman of the Democratic Central Committee of Cook County was held to have standing to attack by *mandamus* the validity of a statute which affected his duties as chairman of the County Central Committee of his political party with respect to the nomination of judges in the county. In the same case, however, the court denied him standing to attack the validity of a statute that involved nomination of judges in counties other than Cook, saying: "This legislation does not in any way affect relator and he has no right to complain." (323 Ill. at 566.) The *Faulkner* case involved the availability of *mandamus* to compel the

public officials to remove an unlawful obstruction from the public street. *County of Pike v. People ex rel. Metz* was a *mandamus* action brought by the relator, Benjamin B. Metz, to compel the county to pay him $125 which it held. The money had been appropriated by the legislature for "the improvement of the navigation of McKee's creek, as far up as Chambersburg" (11 Ill. at 203), and the statute named Metz as commissioner to superintend the work.

The present case is not, like *County of Cook,* a dispute between two public agencies. It does not, like *Cermak,* concern the validity of a statute that directly involves the duties of a public officer. There is no purpresture involved in this case, as there was in *Faulkner.* The relator in *Pike County* was asserting an interest that the statute created in him; he was not, like the plaintiff Hester in the case before us, alleging a claim which, if it existed, did not belong to her. Nor, we may add, is the proposition of the plaintiff Hester strengthened by a reference to *Paepcke v. Public Building Com. of Chicago* (1970), 46 Ill.2d 330, or to the host of cases that have entertained attacks by taxpayers upon the validity of taxing statutes. There is no "logical nexus" between the plaintiff Hester's status as a taxpayer and the relief she seeks in this case. See *Flast v. Cohen* (1968), 392 U.S. 83, 20 L. Ed. 2d 947, 88 S. Ct. 1942; *United States v. Richardson* (1974), 418 U.S. 166, 41 L. Ed. 2d 678, 94 S. Ct. 2940; *Schlesinger v. Reservists Committee* (1974), 418 U.S. 208, 41 L. Ed. 2d 706, 94 S. Ct. 2925.

The judgment of the appellate court is reversed, and the judgment of the circuit court is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*