2023 IL App (1st) 220996-U

FIRST DISTRICT,
FIRST DIVISION
December 26, 2023

No. 1-22-0996

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| MICHAEL TOCK, HECTOR HOYOS and KEITH WETTERQUIST, individually, and on behalf of all others similarly situated, | ) ) ) ) | Appeal from the Circuit Court of Cook County, Illinois. |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | No. 2021 CH 05781 |
| VILLAGE OF STONE PARK, an Illinois Municipal Corporation, | ) ) ) | Honorable Neil H. Cohen, |
| Defendant-Appellee. | ) | Judge Presiding. |

_____

JUSTICE COGHLAN delivered the judgment of the court.
Justices Lavin and Pucinski concurred in the judgment.

**ORDER**

¶ 1     *Held*: Dismissal of plaintiffs' first amended class action complaint pursuant to section 2-619 of the Code of Civil Procedure is affirmed where one plaintiff lacked standing to sue and the remaining plaintiffs failed to exhaust administrative remedies.

¶ 2     In their first amended class action complaint against defendant Village of Stone Park (Village), plaintiffs Michael Tock, Hector Hoyos, and Keith Wetterquist (plaintiffs), individually, and on behalf of others similarly situated, sought declaratory and injunctive relief

regarding the issuance of red light camera tickets to motorists at the intersection of Mannheim Road and Lake Street (intersection).[1]

¶ 3        Plaintiffs alleged that the Village issued red light camera tickets at the intersection in violation of section 11-208.6(c-5) of the Illinois Vehicle Code (Vehicle Code) (625 ILCS 5/11-208.6(c-5) (West 2020)), which prohibits the issuance of red light camera tickets to motorists who come to a complete stop after the stop line, but before entering the intersection, as long as no pedestrians or bicyclists are present. Plaintiffs asserted the Village changed the angle of the red light camera, making it impossible to determine whether motorists had committed a red light violation.

¶ 4        The circuit court granted the Village's motion to dismiss pursuant to section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619) (West 2020)), finding that Tock lacked standing because his ticket was dismissed, and Hoyos and Wetterquist failed to exhaust their administrative remedies. For the following reasons, we affirm.

¶ 5                                    BACKGROUND

¶ 6        Section 11-208.6 of the Vehicle Code authorizes and regulates the use of "automatic traffic law enforcement systems" (red light cameras). See 625 ILCS 5/11-208.6 (West 2020). An "automated traffic law enforcement system" is a system that "produces a recorded image of a motor vehicle's violation of a provision of [the Vehicle Code] *** and is designed to obtain a clear recorded image of the vehicle and the vehicle's license plate." 625 ILCS 5/11-208.6(a).

_____

[1] On November 16, 2021, Tock filed the original class action complaint in this case. On February 14, 2022, Tock was granted leave to file the first amended class action complaint, adding Hoyos and Wetterquist as plaintiffs.

¶ 7 Section 11-208.6(c-5) of the Vehicle Code prohibits the issuance of violations "in instances where the motor vehicle comes to a complete stop and does not enter the intersection, *** unless one or more pedestrians or bicyclists are present, even if the motor vehicle stops at a point past a stop line or crosswalk where a driver is required to stop ***." 625 ILCS 5/11-208.6(c-5). A written notice of violation must be delivered to the registered owner of the vehicle and "shall" include, in part, the vehicle's registration number, the violation charged, the date, time, and location of the violation, a copy of the recorded images, the civil penalty imposed, and a website where the recorded images may be viewed. 625 ILCS 5/11-208.6(d)(2)-(6), (11). The registered owner may pay the fine or "challeng[e] the charge in court, by mail, or by administrative hearing." 625 ILCS 5/11-208.6(d)(10).

¶ 8 Pursuant to section 11-208.3 of the Vehicle Code (625 ILCS 5/11-208.3(a) (West 2020)), the Village adopted its own red light camera ordinance. See Code of Stone Park §70.03 (passed Jan. 1, 2008) (Village Code). The Village Code provides that "[t]he recorded images produced by the automated traffic law enforcement system, *** shall capture and display images of the vehicle allegedly violating traffic-control signals ***." *Id.* §70.03(A). A notice of violation delivered to the registered owner of the vehicle "establish[es] prima facie evidence of a violation ***." *Id.* §70.03(D). The registered owner may pay the fine or challenge the charge in an administrative hearing. *Id.* §70.03(D)(10). The Village Code establishes a Code Hearing Unit comprised of a hearing officer as the "administrative adjudication system for all violations of the village code." *Id.* §70.03(G). Final determinations of red light violations are subject to review under Illinois Administrative Review Law (735 ILCS 5/3-102) (West 2020)). See 625 ILCS 5/11-208.3(d); Code of Stone Park §70.03(R).

¶ 9          On July 2, 2021, while driving southbound on Mannheim Road toward Lake Street, Tock "came to a complete stop before the Intersection," but "past the white stop line" before making a right-hand turn onto Lake Street. No pedestrians or bicyclists were present. Tock received a notice of red light violation, which he challenged at an in-person hearing. Although Tock was found not guilty by the hearing officer, he alleges he incurred economic harm due to the "personal time and resources" expended attending the hearing.

¶ 10         Hoyos and his wife, Sherry Hoyos,[2] received a notice of red light violation after Sherry made a right-hand turn at the same intersection on October 15, 2021. Sherry alleges she came to a "complete stop before the Intersection, but after crossing the white stop line" and no pedestrians or bicyclists were present. Hoyos and Sherry contested the violation at an at an in-person hearing, arguing that "it's not enough camera to show the whole story [(*i.e.*, that Sherry came to a complete stop)], which is not fair to the driver." The hearing officer held that there was no evidence on the camera that Sherry stopped, adding, "[w]hen you're getting beyond the camera, you're basically in the intersection ***." Hoyos was found liable and advised that he could "appeal that to the circuit court." He paid the $100 fine under "duress" and "protest," but did not file an administrative review action.

¶ 11         Wetterquist received a notice of red light violation for making a right-hand turn at the same intersection on December 28, 2021. Like the other plaintiffs, he claims he came "to a complete stop before the Intersection, but after crossing the white stop line," and no pedestrians or bicyclists were present. Wetterquist did not contest the violation, but paid the $100 fine under "duress" and "protest."

---

[2] Both Sherry and Hector Hoyos are registered owners of the vehicle. To avoid confusion, we will refer to Sherry by her first name.

¶ 12      Plaintiffs' first amended class action complaint against the Village alleged that "[s]ometime between August 10, 2019 and July 2, 2021, [the Village] changed the positioning, set-up and/or angle of the Red-Light Cameras at the Intersection," so it "no longer showed the entire area between the stop line and the Intersection for southbound vehicles on Mannheim Road turning right onto Lake Street." Thereafter, it was "impossible to independently determine" from the images and videos whether motorists had come to a complete stop before entering the intersection. Due to the Village's "practice" of issuing "Red-Light Camera tickets when a vehicle stops past the stop line or crosswalk, even though the motor vehicle comes to a complete stop before entering the intersection," "hundreds" of motorists are being wrongfully ticketed.

¶ 13      Count I alleged a violation of procedural due process under the Illinois Constitution. According to plaintiffs, the Village is unable to establish "a prima facie case of a Red-Light Camera violation" based on its failure to install a camera that shows the entire area at issue. As a result, plaintiffs are being denied "a fair and meaningful hearing in violation of due process." Counts II and III raised implied causes of actions for violations of sections 11-208.3 and 11-208.6 of the Vehicle Code and section 70.03 of the Village Code. Count IV alleged a claim for unjust enrichment seeking repayment of the fines paid by motorists found liable.

¶ 14      In relief, plaintiffs sought declarations that: the tickets "issued to motorists where the Red-Light Cameras fail to show the entire area between the stop line and the Intersection *** are invalid and unenforceable"; the Village "failed to establish a *prima facie* case as a matter of law" for those red light camera tickets; and the Village's "failure to have a ticket review procedure that ensures fairness is unlawful and violates due process." They also requested the issuance of an injunction requiring the Village to "refund all fines collected" and "enjoin[ing] [the Village]

from issuing any further Red-Light Camera tickets" without a camera that "show[s] the entire area between the white stop line and the Intersection."

¶ 15        The Village moved to dismiss plaintiffs' complaint pursuant to section 2-619.1 of the Code of Civil Procedure (735 ILCS 5/2-619.1 (West 2020)) (allowing combined motions to dismiss under sections 2-615 and 2-619). Under section 2-615 (735 ILCS 5/2-615 (West 2020)), the Village argued that plaintiffs' "declaratory judgment claim improperly seeks to adjudicate past conduct." The Village also argued that "there is no language establishing a private cause of action under [the due process clause] of the Illinois Constitution" because "plaintiffs had an opportunity to contest the violation before a hearing officer at an administrative hearing." The Village urged the court to decline implying "new" private causes of actions under the Vehicle Code and the Village Code, arguing that plaintiffs' unjust enrichment claim "fails as a matter of law" because it "cannot stand on its own." See *Martis v. Grinnell Mutual Reinsurance Co.*, 388 Ill. App. 3d 1017, 1024 (2009) ("Unjust enrichment is not a separate cause of action that, standing alone, will justify an action for recovery.").

¶ 16        Plaintiffs responded that their action for declaratory relief is "not limited to past conduct";  Illinois courts have "consistently upheld private causes of action for due process claims under the Illinois Constitution"; plaintiffs were deprived of a "meaningful" opportunity to contest the allegations against them, in violation of procedural due process; implying private causes of actions under the Vehicle Code and the Village Code is warranted and plaintiffs lack "an adequate remedy for violations of the statute."

¶ 17        Under section 2-619 (735 ILCS 5/2-619), the Village asserted that plaintiffs failed to exhaust administrative remedies as Hoyos did not file an administrative review action in the

circuit court and Wetterquist never contested his ticket at any level. The Village further asserted that Tock lacked standing because his "citation was dismissed by the hearing officer."

¶ 18    In support of its motion, the Village attached an affidavit from the Chief of Police, Christopher Pavini, attesting that "[t]he area outside of the righthand side of the redlight camera video frame is considered to be the intersection of Mannheim Road and Lake Street" and that, even if plaintiffs stopped their vehicles outside of the video frame, they would have stopped "after [their] vehicle[s] entered the intersection." The Village also attached the transcripts from Tock's and Hoyos' administrative hearings.[3]

¶ 19    Regarding the Village's arguments under section 2-619, plaintiffs argued that three exceptions to the exhaustion doctrine applied. Specifically, that no issues of fact are presented and "[n]o [agency] expertise is required to determine whether the Cameras record the area where the vehicle enters the Intersection ***." Additionally, "Stone Park cannot provide an adequate remedy and it is patently futile for the Plaintiffs to seek relief from Stone Park" because it "is the entity responsible for installing and positioning the Cameras" and the hearing officer indicated that "it could not be determined *** whether the Hoyos' vehicle came to a complete stop before the Intersection." Plaintiffs also argued that Tock had standing since he used "his personal time and resources to attend the hearing and suffered economic harm as a result."

¶ 20    On June 6, 2022, the circuit court granted the Village's motion to dismiss pursuant to section 2-619. The court agreed that Tock lacked standing since he "was found not liable" and "has not suffered any injury that can be addressed by this court as a matter of law." Regarding

---

[3] While the record indicates that the Village also included videos of plaintiffs' alleged violations as exhibits to its motion, the Village explains in its appellate brief that it "inadvertently never transmitted" the videos of Sherry's and Wetterquist's violations to the circuit court. So, it appears that only the video of Tock's alleged violation was presented to the circuit court. That video is not in the record on appeal.

Hoyos' and Wetterquist's failure to exhaust administrative remedies, the Court found that no exception to the exhaustion doctrine applied. The court explained that issues of fact and agency expertise exist regarding "(1) whether the tickets were properly issued; (2) whether the Red Light Camera fully captures the Intersection; and (3) whether Plaintiffs came to a complete stop at the Intersection."[4]

¶ 21                                    ANALYSIS

¶ 22        Plaintiffs argue that the circuit court erred in concluding that Tock lacked standing and Wetterquist and Hoyos were required to exhaust administrative remedies. A section 2-619 motion to dismiss "admits the legal sufficiency of the plaintiff's claim but asserts certain defects or defenses outside the pleadings which defeat the claim." *Sandholm v. Kuecker*, 2012 IL 111443, ¶ 55. The court must construe the pleadings and supporting documents in the light most favorable to the nonmoving party and "accept as true all well-pleaded facts in plaintiff's complaint and all inferences that may reasonably be drawn in plaintiff's favor." *Id.* (citing *Czarobski v. Lata*, 227 Ill. 2d 364, 369 (2008) and *Morr-Fitz, Inc. v. Blagojevich*, 231 Ill. 2d 474, 488 (2008)). The reviewing court "must consider whether the existence of a genuine issue of material fact should have precluded the dismissal or, absent such an issue of fact, whether dismissal is proper as a matter of law." *Kedzie and 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 116-17 (1993). We review a section 2-619 dismissal *de novo*. *Sandholm*, 2012 IL 111443, ¶ 55.

¶ 23                                Tock's Standing

---

[4] This is the only exception to the exhaustion doctrine that was addressed by the circuit court. Because the court found dismissal proper under section 2-619, it found that it was "unnecessary to consider" defendant's arguments under section 2-615.

¶ 24     To have standing, a plaintiff must have "some injury in fact to a legally cognizable interest." *Greer v. Illinois Human Housing Development Authority*, 122 Ill. 2d 462, 492 (1988). The actual or threatened injury "must be: (1) distinct and palpable [citation]; (2) fairly traceable to the defendant's actions [citation]; and (3) substantially likely to be prevented or redressed by the grant of the requested relief [citation]." (Internal quotation marks omitted.) *Id.* at 492-93.

¶ 25     Plaintiffs claim that Tock suffered an "economic injury because he had to use his personal time and resources to attend the hearing." They seek declarations that the tickets issued by the Village are invalid, that the Village's ticket review procedure violates due process, and an injunction requiring the Village to "refund all fines collected" from these tickets. Tock was found not liable, his ticket was dismissed, and he did not pay a fine. Therefore, it is not "substantially likely" that granting the requested relief would prevent the economic harm incurred from attending the hearing. See *Blaha v. City of Chicago*, 2022 IL App (1st) 210546, ¶ 57 (motorist lacked standing to challenge ordinance's late payment penalty provision where the penalty was not applied to him).

¶ 26     Plaintiffs' reliance on *Potek v. City of Chicago*, 2022 IL App (1st) 211286 to establish standing, is misplaced. There, four plaintiffs were found liable for using their cell phones while driving in violation of a city ordinance. *Id.* ¶ 1. Three of the plaintiffs paid the fine. *Id.* Plaintiffs asserted that the administrative agency lacked subject-matter jurisdiction to find them liable. *Id.* ¶ 37. On appeal, this court found that, "[r]egardless of whether plaintiffs paid the fine or participated in the proceedings, the result is the same: a legal finding of liability against each plaintiff, issued by an agency which had no authority to do so." *Id.* ¶ 39. In contrast, Wetterquist and Hoyos do not challenge the agency's authority to enter a finding of liability, and *no finding of liability* was entered against Tock.

¶ 27    Plaintiffs also argue that Tock has standing because he is "subject as a traveling motorist to Defendant's continued illegal conduct in the future." Speculation that Tock *might* be found liable for future violations does not constitute a "distinct and palpable" injury. See *Maglio v. Advocate Health and Hospitals Corp.*, 2015 IL App (2d) 140782, ¶ 24 (recognizing that speculative future harm is not a "distinct and palpable" injury). The circuit court correctly determined that Tock lacked standing to bring this action.

¶ 28                    Exhaustion of Administrative Remedies

¶ 29    "Generally, a party may not seek judicial relief from an administrative action unless the party has exhausted all available administrative remedies." *Arvia v. Madigan*, 209 Ill. 2d 520, 531 (2004). Because the Vehicle Code and the Village Code adopt Illinois Administrative Review Law, it "is the sole and exclusive method for obtaining judicial review of a final administrative decision." *Midland Hotel Corp. v. Director of Employment Security*, 282 Ill. App. 3d 312, 316 (1996). Illinois Administrative Review Law provides that, "[u]nless review is sought of an administrative decision within the time and in the manner herein provided, the parties to the proceeding before the administrative agency shall be barred from obtaining judicial review of such administrative decision." 735 ILCS 5/3-102. An action to review "a final administrative decision shall be commenced by the filing of a complaint" in the circuit court within 35 days of service of the agency's decision. 735 ILCS 5/3-103; see also 735 ILCS 5/3-104. The circuit court's final decision, order, or judgment is "reviewable by appeal." 735 ILCS 5/3-112.

¶ 30    "Where the Administrative Review Law is applicable and provides a remedy, a circuit court may not redress a party's grievance through any other type of action." *County of Knox ex rel. Masterson v. Highlands, L.L.C.*, 188 Ill. 2d 546, 551 (1999). "The reasons for the exhaustion requirement are to allow the agency to fully develop and consider the facts of the case before it,

to allow the agency to utilize its expertise, and to allow the aggrieved party to obtain relief from the agency, thus making judicial review unnecessary." *Canel v. Topinka*, 212 Ill. 2d 311, 320-21 (2004). The exhaustion doctrine also "helps protect agency processes from impairment by avoidable interruptions, allows the agency to correct its own errors, and conserves valuable judicial time by avoiding piecemeal appeals." *Castaneda v. Illinois Human Rights Commission*, 132 Ill. 2d 304, 308 (1989).

¶ 31 Although our supreme court requires "strict compliance" with the exhaustion doctrine, it also recognizes several exceptions. *Id.* at 308-09. These exceptions include: where (1) the "agency's jurisdiction is attacked because it is not authorized by statute"; (2) "no issues of fact are presented or agency expertise is not involved"; (3) it is "patently futile to seek relief before the agency"; and (4) "the agency cannot provide an adequate remedy." *Id.* at 309. Plaintiffs assert that each of these exceptions are applicable here.

¶ 32 *Agency's Jurisdiction Attacked as Unauthorized by Statute*

¶ 33 Exhaustion of administrative remedies is not required where the *agency's* jurisdiction is attacked as unauthorized by statute. *Castaneda*, 132 Ill. 2d at 309. This is because the "determination of the scope of [an administrative agency's] power and authority is a judicial function and is not a question to be finally determined by the administrative agency itself." *County of Knox*, 302 Ill. App. 3d at 345.

¶ 34 Plaintiffs argue, for the first time on appeal, that they were not required to exhaust administrative remedies because they "have directly challenged *Defendant's* [(*the Village's*)] inherent legal authority *** to issue any ticket" from the red light camera at issue. (Emphasis added.) Plaintiffs have waived this argument by failing to raise it in the circuit court. See *Sheth v. SAB Tool Supply Co.*, 2013 IL App (1st) 110156, ¶ 59. In any event, this exception is

inapplicable here, as plaintiffs are not challenging the *agency's* authority to adjudicate red light camera tickets. See, *e.g.*, *Pinkston v. City of Chicago*, 2022 IL App (1st) 200957, ¶¶ 27- 28, *rev'd on other grounds*, *Pinkston v. City of Chicago*, 2023 IL 128575 (rejecting applicability of this exception where plaintiff was challenging the City's authority to issue parking tickets rather than the agency's authority to adjudicate parking tickets and "the tickets [were] issued by the City itself, in the exercise of its police power").

¶ 35                    *No Issues of Fact Presented or No Agency Expertise Involved*

¶ 36        Exhaustion of administrative remedies is not required where there are no issues of fact presented, or agency expertise is not involved. *Castaneda*, 132 Ill. 2d at 309. As the trial court properly recognized, agency expertise is involved in resolving factual disputes regarding whether the red light camera adequately shows the intersection and whether plaintiffs committed red light violations.

¶ 37        The Code Hearing Unit was specifically established as the "administrative adjudication system for all violations of the village code." Code of Stone Park §70.03(G). A hearing officer is tasked with "hear[ing] testimony and accept[ing] evidence that is relevant to the existence of the code violation" and issuing "a determination of liability or non-liability in accordance with consideration of the facts and testimony." *Id.* §70.03(H)(1), (Q). The agency routinely adjudicates red light camera tickets and possesses the necessary expertise to determine whether plaintiffs committed red light violations. Compare *Pinkston*, 2022 IL App (1st) 200957, ¶ 45 *rev'd on other grounds*, *Pinkston*, 2023 IL 128575 (issues of fact and agency expertise involved since the plaintiff "challenges the [parking] violation itself" and the agency "routinely adjudicates questions like this") with *Maschek v. City of Chicago*, 2015 IL App (1st) 150520, ¶ 47 (no issues of fact or agency expertise involved "since plaintiff does not contest that he was

speeding") and *Kennedy v. City of Chicago*, 2022 IL App (1st) 210492, ¶ 26 (no issues of fact or agency expertise implicated where "plaintiffs do not contest that they committed red light violations").

¶ 38                                                                                         *Futility*

¶ 39        The "futility" exception excuses a party's failure to exhaust administrative remedies "when it would be patently useless to do so." *Beahringer v. Page*, 204 Ill. 2d 363, 378 (2003). However, "[e]ven clear indications that the administrative agency will rule adversely are not sufficient to bypass or terminate the administrative process." *AEH Construction, Inc. v. State Department of Labor*, 318 Ill. App. 3d 1158, 1163 (2001).

¶ 40        Plaintiffs argue that exhausting administrative remedies would be futile here because the Village Code "prohibits introduction of any defense other than the three enumerated defenses" in the Village Code, as follows: (1) the vehicle or registration plates were stolen, (2) the driver was yielding to an emergency vehicle or was part of a funeral procession, and (3) the vehicle was being operated by someone other than the registered owner or a lessee. Code of Stone Park §70.03(E). We disagree. The Village Code also allows a registered owner to "contest the merits of the alleged violation" at an administrative hearing. *Id.* §70.03(N). In addition, the actual notice of violation provides a "*complete list* of defenses/grounds for contesting" a ticket, including that "[t]he facts alleged in the Notice of Violation are inconsistent with or do not support a finding that a violation occurred." (Emphasis added.)

¶ 41        The record shows that motorists are free to challenge the merits of an alleged violation, including the evidence of the violation, at an in-person hearing. For example, Hoyos challenged the merits of his alleged violation at his in-person hearing, arguing that the red light camera failed to show whether Sherry entered the intersection without coming to a complete stop. The

hearing officer rejected this argument and found Hoyos liable, but advised him that he could "appeal that [decision] to the circuit court." The fact that Hoyos lost his challenge does not establish that it is "patently useless" to contest a red light ticket before the agency or that he would have been unsuccessful if he had pursued administrative review in the circuit court. See *Dvorkin v. Illinois Bell Telephone Co.*, 34 Ill. App. 3d 448, 457 (1975) ("We cannot assume that the [agency's] decision will be against plaintiff or that if unsuccessful, appeal will not eventually result in a different decision \*\*\*."). One need look no further than Tock's successful challenge to appreciate that not all administrative challenges to red light tickets are futile.

¶ 42                      *Agency Unable to Provide an Adequate Remedy*

¶ 43            A plaintiff is not required to exhaust administrative remedies where the agency cannot provide an adequate remedy. *Castaneda*, 132 Ill. 2d at 309. Plaintiffs claim that they are not just asking "for relief on their own present or past tickets," but are attacking the Village's "entire enforcement framework" and seeking declaratory and injunctive relief, which is "unavailable to them through the administrative hearing process or through any review of agency action."

¶ 44            Plaintiffs initially alleged "a systemic failure entirely similar to the City's 'routine practice' as alleged in" *Pinkston*, 2022 IL App (1st) 200957. However, after briefing was completed in this appeal, our supreme court reversed the appellate court's judgment. See *Pinkston*, 2023 IL 128575, ¶ 2. In light of this reversal, plaintiffs' argument that "[d]efendant cannot distinguish *Pinkston* in any material way" is irrelevant.

¶ 45            In *Pinkston*, the plaintiff filed a class action complaint against the City, alleging that it was engaged in a " 'routine practice' of issuing central business district [parking] tickets" to "vehicles that were parked outside the central business district," which carry a higher fine than " 'non-central business district' " tickets. *Id.* ¶¶ 4, 7. Plaintiff claimed that he was issued a central

business district ticket even though he was parked outside of a central business district, and paid the associated fine under duress. *Id.* ¶ 6. He sought a declaration that the erroneously issued tickets were void, an injunction to prevent the further issuance of these tickets, and repayment of fines. *Id.* ¶ 8.

¶ 46      The City moved to dismiss, arguing that plaintiff failed to exhaust his administrative remedies. *Id.* ¶ 9. Pinkston had "contested his ticket solely on the basis that he paid the meter via the ParkChicago payment app and that somehow his payment became associated with a Minnesota license plate rather than with the Illinois license plate affixed to his vehicle." *Pinkston*, 2022 IL App (1st) 200957, ¶ 41.

¶ 47      A split panel of this court reversed the dismissal of plaintiff's complaint, finding that the Department of Administrative Hearings (DOAH) "could not have provided [plaintiff] with the ultimate relief he sought, including injunctive and monetary relief." *Pinkston*, 2023 IL 128575, ¶ 15. Plaintiff alleged that the City was engaged in the "routine practice" of erroneously issuing tickets and sought declaratory and injunctive relief and "restitution for those harmed by the practice." *Pinkston*, 2022 IL App (1st) 200957, ¶ 54. Since the DOAH is "tasked merely with making a finding of liability or no liability" with respect to individual tickets, the appellate court "fail[ed] to see" how the DOAH could provide Mr. Pinkston with "any of this relief." *Id.*

¶ 48      Our supreme court disagreed, finding no exception to the exhaustion doctrine under the facts of *Pinkston*. *Pinkston*, 2023 IL 128575, ¶ 34. The court reaffirmed well-established precedent that "an aggrieved party cannot circumvent administrative remedies 'by a class action for declaratory judgment, injunction, or other relief.' " *Id.* (quoting *People ex rel. Naughton v. Swank*, 58 Ill. 2d 95, 102 (1974)). The supreme court explained that the administrative procedure in place provided plaintiff "with ample opportunity to contest his parking ticket." *Id.* ¶ 31.

Although plaintiff challenged his ticket, by mail, "on the ground the parking meter application he used to pay the meter did not record the correct license plate" (*id.* ¶ 14), he never alleged that "he was not parked within the central business district—the very issue at the forefront of his class-action lawsuit." *Id.* ¶ 32. If he had done so, the hearing officer could have "considered the evidence, *** made findings of fact, and, quite possibly, ruled in his favor. *** If he had been found liable, he could have filed a complaint for judicial review." *Id.*

¶ 49        In rejecting the appellate court's finding that the agency could not provide plaintiff with an adequate remedy (*id.* ¶ 34), the supreme court recognized, as follows:

> "alleging a 'routine practice' or 'systematic failure' does not obviate the need for exhaustion of remedies. Had plaintiff raised his central business district argument in the DOAH and succeeded, he would have had no need for declaratory or injunctive relief. The same can be said of similarly situated plaintiffs, who would have had the same opportunity to challenge their tickets before the DOAH and then on administrative review in the circuit court. Where each individual has an adequate remedy in the administrative process, that remedy cannot be avoided by bundling similar claims in a class action." *Id.* ¶ 40.

¶ 50        The supreme court also rejected plaintiff's argument that his complaint was "not about how the DOAH adjudicates the tickets but how the City issues them" because, "[w]hile the City may issue the tickets through its code enforcement officers, it has also implemented an administrative process to deal with challenges to those tickets, including a hearing before the DOAH." *Id.* ¶ 41. Claiming that exhaustion is not required because the City's actions are at issue "would have the effect of nullifying the administrative process for a whole host of code violations and flood the circuit court with litigation." *Id.*

¶ 51    Similarly, plaintiffs' allegations of "a systemic failure entirely similar to the City's 'routine practice' as alleged in Pinkston [*sic*]" do not "obviate the need" for plaintiffs to exhaust their administrative remedies. See *id.* ¶ 40. The Village Code and Administrative Review Law provide a comprehensive administrative procedure through which plaintiffs could have challenged their tickets. Plaintiffs, who "each *** [had] an adequate remedy in the administrative process" cannot avoid that remedy by "bundling similar claims in a class action" for declaratory, injunctive, or other relief. See *id.*; see also *Naughton*, 58 Ill. 2d at 101 (plaintiffs could not "disregard" administrative review by filing a class action challenging agency's practice of awarding assistance benefits); *Dvorkin*, 34 Ill. App. 3d at 100, 105 (class action alleging phone company was engaged in a "policy and practice" of providing reduced rates to employees was properly dismissed where plaintiffs sought "relief by original proceedings in equity without first taking any action before the [agency]"); *Midland*, 282 Ill. App. 3d at 320-21 (plaintiffs could not avoid administrative review "by bringing a *** class action," even where they challenged the department's alleged "ongoing illegal conduct").

¶ 52    Following *Pinkston*, 2023 IL 128575, we granted the parties leave to file supplemental memoranda addressing the supreme court's decision. Plaintiffs now argue that *Pinkston* is distinguishable because "Hoyos and Tock challenged their tickets on the very basis on which they brought their lawsuit, and, by doing so, they "proved (at least with respect to Plaintiff Hoyos) the inadequacy of any remedy that could be provided by Stone Park."

¶ 53    As discussed herein, the unsuccessful outcome of Hoyos' administrative hearing does not show that the agency provided an inadequate remedy. Hoyos could have challenged the hearing officer's findings in a complaint for administrative review in the circuit court. See *id.* ¶ 32 (noting that if Pinkston unsuccessfully challenged his ticket before the DOAH on central

business district grounds, he "could have filed a complaint for judicial review"). And Wetterquist, like Tock, could have successfully challenged his ticket before the agency. Plaintiffs, who "had the immediate opportunity to challenge [their] individual ticket[s] before the [Code Hearing Unit] and the circuit court within the confines of the Administrative Review Law," cannot now "circumvent the administrative review process with [their] class-action complaint." *Id.* ¶ 52.[5]

¶ 54     Accordingly, the circuit court correctly ruled that plaintiffs failed to exhaust their administrative remedies and no exceptions to the exhaustion doctrine were applicable.[6]

¶ 55                              CONCLUSION

¶ 56     For the foregoing reasons, we affirm the judgment of the circuit court of Cook County dismissing plaintiffs' first amended complaint.

¶ 57     Affirmed.

---

[5] In their supplemental memorandum, plaintiffs reiterate "two *** public policy concerns" raised in their previous briefs. As the Village points out, these arguments impermissibly go beyond the scope of addressing the applicability of *Pinkston*. And, in any event, public policy is not an exception to the exhaustion doctrine. See *Castaneda*, 132 Ill. 2d at 308-09.

[6] Because we affirm the dismissal of plaintiffs' complaint under section 2-619, we need not address the Village's alternative arguments for dismissal under section 2-615.