**2023 IL 128575**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

---

(Docket No. 128575)

ALEC PINKSTON, Appellee, v. THE CITY OF CHICAGO, Appellant.

*Opinion filed November 30, 2023.*

JUSTICE HOLDER WHITE delivered the judgment of the court, with opinion.

Chief Justice Theis and Justices Neville, Overstreet, Cunningham, Rochford, and O'Brien concurred in the judgment and opinion.

## OPINION

¶ 1    Plaintiff, Alec Pinkston, filed a class-action complaint alleging defendant, the City of Chicago (City), had engaged in the routine practice of improperly issuing central business district tickets for parking meter violations. The City moved to dismiss, arguing plaintiff failed to exhaust his administrative remedies and voluntarily paid his fine. The Cook County circuit court granted the motion, but the

appellate court reversed and remanded for further proceedings. 2022 IL App (1st) 200957, ¶ 3.

¶ 2 Now on appeal, the City argues dismissal of plaintiff's class-action complaint was proper because he (1) failed to exhaust his administrative remedies and (2) voluntarily paid the fine. We reverse the judgment of the appellate court and affirm the judgment of the circuit court.

¶ 3                                BACKGROUND

¶ 4 Within the Municipal Code of Chicago (Municipal Code), the City has established various provisions with respect to public parking, including the use of parking meters. The fine for exceeding the time purchased at a parking meter differs depending on whether the violation occurs in the "central business district" or the "non-central business district." At the time the alleged violation occurred in this case, the failure to comply with the parking meter regulations in the central business district resulted in a $65 fine. Chicago Municipal Code § 9-64-190(b) (amended Nov. 16, 2016); Chicago Municipal Code § 9-100-020(b) (amended at Chi. City Clerk J. Proc. 37,265, 38,062 (Nov. 16, 2016)). A $50 fine applied to a similar violation outside the central business district. Chicago Municipal Code § 9-64-190(a) (amended Nov. 16, 2016); Chicago Municipal Code § 9-100-020(b) (amended Apr. 21, 2021).

¶ 5 Section 9-4-010 of the Municipal Code defines the central business district as comprising the following area:

"beginning at the easternmost point of Division Street extended to Lake Michigan; then west on Division Street to LaSalle Street; then south on LaSalle Street to Chicago Avenue; then west on Chicago Avenue to Halsted Street; then south on Halsted Street to Roosevelt Road; then east on Roosevelt Road to its easternmost point extended to Lake Michigan." Chicago Municipal Code § 9-4-010 (amended July 21, 2021).

¶ 6 In October 2019, plaintiff filed a class-action complaint against the City. Therein, he alleged that on May 21, 2019, he parked his vehicle in a parking meter zone located at or near 1216 South Wabash Avenue in Chicago. He returned to his

vehicle and found a parking ticket, purporting to be pursuant to section 9-64-190(b) of the Municipal Code for an expired parking meter within the central business district and carrying with it a $65 fine. According to plaintiff, 1216 South Wabash Avenue is located south of Roosevelt Road and thus outside the southernmost boundary of the central business district. Plaintiff alleged he paid the $65 fine "under duress."

¶ 7        Also in his complaint, plaintiff cited a May 2019 news article that analyzed a dataset containing information regarding parking tickets issued by the City. Based on the article, he claimed that, over a five-year period from 2013 to 2018, the City issued more than 30,000 central business district tickets for vehicles that were parked outside the central business district. Plaintiff alleged the City had a "routine practice" of issuing central business district tickets to vehicles parked outside the boundaries of that district. Thus, he claimed plaintiffs and proposed class members were subjected to fines for Municipal Code violations they did not commit.

¶ 8        On behalf of himself and a proposed class of similarly situated individuals, plaintiff set forth three counts in his complaint, seeking (1) a judgment declaring all central business district tickets issued to vehicles parked outside the district were facially invalid, void, and unenforceable; (2) an injunction to prevent the City from continuing to issue central business district tickets to vehicles parked outside the district; and (3) as a remedy for unjust enrichment, the repayment of fines, penalties, and interest the City had unjustly received and retained at the expense of him and class members.

¶ 9        In response, the City filed a motion to dismiss pursuant to section 2-619(a)(9) of the Code of Civil Procedure (Procedure Code) (735 ILCS 5/2-619(a)(9) (West 2018)), arguing plaintiff failed to exhaust his administrative remedies and that failure deprived the circuit court of jurisdiction over his class-action lawsuit. The City contended the Municipal Code establishes an administrative process for challenging parking tickets, including providing for a hearing before the Chicago Department of Administrative Hearings (DOAH), and a finding of liability could be challenged by filing a complaint for judicial review under the Administrative Review Law (735 ILCS 5/3-101 *et seq.* (West 2018)).

¶ 10     In addition, the City argued plaintiff's claims were barred by the voluntary payment doctrine and that his conclusory allegation that he paid "under duress" did not provide an exception to the doctrine.

¶ 11     In his response, plaintiff argued he did not need to exhaust administrative remedies before seeking judicial review because several exceptions to the exhaustion doctrine applied, including that the administrative proceeding could not provide adequate relief, such as an injunction. Plaintiff also argued the voluntary payment doctrine did not bar his claims because his payment of the ticket amounted to compulsion and duress, as he and other class members could be subjected to late payment fees, interest, immobilization of vehicles, suspension of driver's licenses, liens on personal property, and other costs associated with the City's debt collection attempts.

¶ 12     In September 2020, the circuit court granted the City's motion with prejudice. The court found plaintiff failed to exhaust his administrative remedies and none of the exceptions to the exhaustion doctrine applied. The court did not base its decision on the voluntary payment doctrine, finding a factual question remained as to whether plaintiff's payment of the parking ticket fine was truly voluntary.

¶ 13     Plaintiff appealed. While his appeal was pending, he filed an unopposed motion for judicial notice, asking the appellate court to take notice of the outcome of his proceedings before the DOAH. Plaintiff indicated he challenged his ticket before the DOAH but was still found liable. The court allowed the motion.

¶ 14     In its response to the motion, the City included a letter dated May 27, 2019, in which plaintiff challenged his ticket, by mail, on the ground the parking meter application he used to pay the meter did not record the correct license plate. A printout of the administrative hearing indicates plaintiff did not show any evidence as to why a Minnesota license plate was on the receipt and thus he was found liable.

¶ 15     In its written opinion, the appellate court, with one justice dissenting, reversed and remanded for further proceedings. 2022 IL App (1st) 200957, ¶ 3. Plaintiff had argued several exceptions to the exhaustion doctrine applied, and the appellate court agreed one exception did apply, *i.e.*, that the DOAH could not have provided him the ultimate relief he sought, including injunctive and monetary relief. *Id.* In response to the City's argument on the voluntary payment doctrine, the court agreed

with the circuit court that questions of fact remained, precluding dismissal on that basis. *Id.* ¶ 66.

¶ 16    The dissenting justice disagreed with the majority's holding that plaintiff met an exception to the exhaustion of remedies doctrine, stating the relief plaintiff sought was premised on the factual finding of whether the ticket was proper, which was within the authority of the DOAH and not the circuit court. *Id.* ¶ 80 (Oden Johnson, J., dissenting).

¶ 17    In September 2022, the City petitioned this court for leave to appeal, and we allowed that petition. Ill. S. Ct. R. 315 (eff. Oct. 1, 2021). The Illinois Municipal League, Chicago Appleseed Center for Fair Courts, Chicago Council of Lawyers, Chicago Jobs Council, and Woodstock Institute sought, and we granted, leave to file *amicus* briefs. Ill. S. Ct. R. 345 (eff. Sept. 20, 2010).

¶ 18                                              ANALYSIS

¶ 19    The City raises two issues on appeal. First, the City argues plaintiff failed to exhaust his administrative remedies and he could not avoid exhaustion by bringing a class action for equitable relief based on allegations of a routine course of conduct. Second, the City argues plaintiff voluntarily paid his fine and thus has no cause of action.

¶ 20                                       I. Standard of Review

¶ 21    The circuit court dismissed plaintiff's complaint under section 2-619(a)(9) of the Procedure Code, which permits dismissal of an action where "the claim asserted against defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2-619(a)(9) (West 2018). " 'The phrase "affirmative matter" refers to a defense that negates the cause of action completely or refutes crucial conclusions of law or conclusions of material fact contained in or inferred from the complaint.' " *Valerio v. Moore Landscapes, LLC*, 2021 IL 126139, ¶ 19 (quoting *McIntosh v. Walgreens Boots Alliance, Inc.*, 2019 IL 123626, ¶ 16).

¶ 22 In deciding a section 2-619 motion to dismiss, "a court is to accept all well-pled facts in the complaint as true and will grant the motion only when it appears that no set of facts could be proved that would allow the plaintiff to recover." *Dawkins v. Fitness International, LLC*, 2022 IL 127561, ¶ 24. Moreover, a court " 'must interpret all pleadings and supporting documents in the light most favorable to the nonmoving party.' " *Valerio*, 2021 IL 126139, ¶ 20 (quoting *In re Chicago Flood Litigation*, 176 Ill. 2d 179, 189 (1997)). We review *de novo* the circuit court's dismissal of the complaint pursuant to section 2-619 and consider whether dismissal was proper as a matter of law. *State ex rel. Leibowitz v. Family Vision Care, LLC*, 2020 IL 124754, ¶ 31.

¶ 23 II. Exhaustion of Remedies

¶ 24 The doctrine of exhaustion provides that a party aggrieved by an administrative decision ordinarily cannot seek judicial review without first pursuing all available administrative remedies. *Castaneda v. Illinois Human Rights Comm'n*, 132 Ill. 2d 304, 308 (1989). "The reasons for the exhaustion requirement are to allow the administrative agency to fully develop and consider the facts of the case before it, to allow the agency to utilize its expertise, and to allow the aggrieved party to obtain relief from the agency, thus making judicial review unnecessary." *Canel v. Topinka*, 212 Ill. 2d 311, 320-21 (2004). Moreover, the doctrine "helps protect agency processes from impairment by avoidable interruptions, allows the agency to correct its own errors, and conserves valuable judicial time by avoiding piecemeal appeals." *Castaneda*, 132 Ill. 2d at 308.

¶ 25 In Illinois, the common-law doctrine of exhaustion is incorporated in the Administrative Review Law. *Id.* at 321; see also *County of Knox ex rel. Masterson v. The Highlands, L.L.C.*, 188 Ill. 2d 546, 551 (1999) (stating "[t]he exhaustion doctrine includes administrative review in the circuit court"). When the Administrative Review Law applies, "any other statutory, equitable or common law mode of review of decisions of administrative agencies" shall not be employed, and a party who fails to seek review of an administrative decision within the time and manner provided by the statute "shall be barred from obtaining judicial review." 735 ILCS 5/3-102 (West 2018). Thus, "where the Administrative Review Law is applicable and provides a remedy, a circuit court may not redress a party's

grievance through any other type of action." *Goral v. Dart*, 2020 IL 125085, ¶ 40; see also *County of Knox*, 188 Ill. 2d at 552 ("The court's power to resolve factual and legal issues arising from an agency's decision must be exercised within its review of the agency's decision and not in a separate proceeding.").

¶ 26    This court has recognized that several exceptions to the doctrine of exhaustion of administrative remedies exist. *Canel*, 212 Ill. 2d at 321.

> "An aggrieved party may seek judicial review of an administrative decision without complying with the exhaustion of remedies doctrine [(1)] where a statute, ordinance or rule is attacked as unconstitutional on its face [citations], [(2)] where multiple administrative remedies exist and at least one is exhausted [citations], [(3)] where the agency cannot provide an adequate remedy or where it is patently futile to seek relief before the agency [citations], [(4)] where no issues of fact are presented or agency expertise is not involved [citations], [(5)] where irreparable harm will result from further pursuit of administrative remedies [citations], or [(6)] where the agency's jurisdiction is attacked because it is not authorized by statute [citation]." *Castaneda*, 132 Ill. 2d at 308-09.

¶ 27    In this case, the appellate court found the third exception applied—that the agency could not provide an adequate remedy. Specifically, the court found plaintiff was not seeking an "individualized determination" of his parking ticket (2022 IL App (1st) 200957, ¶ 56) but instead alleged that the City was engaging in a "routine or systemic practice" (*id.*) and the DOAH was "simply not equipped to provide [him] or the class with the relief sought in this case" (*id.* ¶ 53).

¶ 28    In arguing dismissal of plaintiff's complaint was proper, the City contends he had an adequate administrative remedy and he could not avoid exhaustion by bringing a class action for equitable relief based on allegations of a routine course of conduct.

¶ 29    Initially, we note the underlying issue here—whether plaintiff received an improper parking ticket—is one that is routinely handled at the administrative level. The General Assembly has authorized municipalities to "provide by ordinance for a system of administrative adjudication of vehicular standing and parking violations." 625 ILCS 5/11-208.3(a) (West 2018). The City created the DOAH "to provide for the administrative adjudication of violations of ordinances defining

parking" and "to establish a fair and efficient system for the enforcement of such ordinances." Chicago Municipal Code § 9-100-010(a) (amended Oct. 28, 2015).

¶ 30    Upon receipt of a parking ticket, the recipient "may contest the charge through an administrative adjudication" and raise one or more grounds, including "that the facts alleged in the violation notice are inconsistent or do not support a finding that the specified regulation was violated" and "that the illegal condition described in the compliance violation notice did not exist at the time the notice was issued." Chicago Municipal Code § 9-100-060(a)(5), (6) (amended Oct. 27, 2021). An "administrative correspondence hearing to review the materials" (Chicago Municipal Code § 9-100-070(a), (d) (amended Oct. 28, 2015)) or an "administrative in-person hearing" (*id.* § 9-100-080(a)) with the presentation of evidence and testimony can then take place. The purpose of the administrative hearing "is to consider the evidence presented by the ticket recipient, make findings of fact, and determine whether the ticket recipient is liable for violating the Ordinance." *Van Harken v. City of Chicago*, 305 Ill. App. 3d 972, 984-85 (1999). Thereafter, "the administrative law officer shall enter a determination of no liability or of liability in the amount of the fine for the relevant violation." Chicago Municipal Code § 9-100-070(d) (amended Oct. 28, 2015). "Upon issuance, such determination shall constitute a final determination for purposes of judicial review under the Administrative Review Law of Illinois." *Id.*

¶ 31    Here, the administrative procedure in place provided plaintiff with ample opportunity to contest his parking ticket. He even sent a letter identifying his reason for contesting the ticket—that the license plate was incorrect. The hearing officer found him liable, stating plaintiff failed to submit sufficient evidence to prove his case.

¶ 32    What plaintiff did not do was contest his ticket by stating he was not parked within the central business district—the very issue at the forefront of his class-action lawsuit. See *Calderwood Corp. v. Mahin*, 57 Ill. 2d 216, 220 (1974) ("A defense as to the merits of the case must be raised through administrative review or it will be considered waived."). Had he done so, the hearing officer could have considered the evidence and the applicable Municipal Code sections, made findings of fact, and, quite possibly, ruled in his favor. He then could have received a reduced fine. If he had been found liable, he could have filed a complaint for

judicial review. At present, neither the DOAH nor the circuit court has determined whether plaintiff's parking ticket was invalid on the central business district issue.

¶ 33    If plaintiff had properly pursued his administrative remedies, it would have served the essential purposes of the exhaustion doctrine. Plaintiff would have given the DOAH the opportunity to fully develop and consider the facts of the case, allowed it to utilize its expertise in applying the Municipal Code, allowed him to obtain relief from an improper ticket, and conserved valuable judicial resources. It also would have allowed the City to correct its own error. Because plaintiff failed to raise his central business district argument before the DOAH and did not seek review of the administrative decision in the circuit court, he failed to exhaust his administrative remedies.

¶ 34    We also find no exception to the exhaustion doctrine present under the facts of this case. The only exception relied upon by the appellate court was where the agency cannot provide an adequate remedy. Plaintiff had argued the DOAH could not provide him with injunctive and monetary relief. However, the case law is clear that an aggrieved party cannot circumvent administrative remedies "by a class action for declaratory judgment, injunction or other relief." *People ex rel. Naughton v. Swank*, 58 Ill. 2d 95, 102 (1974) (citing *Chicago Welfare Rights Organization v. Weaver*, 56 Ill. 2d 33 (1973)).

¶ 35    In *Naughton*, the plaintiffs filed a class action challenging the Illinois Department of Public Aid's practice of awarding financial assistance from the date of approval, rather than from the date of application. *Id.* at 96-97. The plaintiffs sought a declaratory judgment that the regulations were invalid and a writ of *mandamus* directing the department to promulgate new regulations. *Id.* at 97-98.

¶ 36    This court held the plaintiffs were still required to exhaust their administrative remedies. *Id.* at 101-02. Otherwise, an applicant for aid could "disregard the procedures" the legislature had provided for internal appeal and instead seek review "by any form of action he chooses." *Id.* at 101. This court held the proposed class action "largely nullifie[d] the Administrative Review Act," which "was not intended to eliminate the requirement that administrative remedies be exhausted, or to establish an additional method for the review of administrative decisions." *Id.* at 101-02. Instead, the act (Ill. Rev. Stat. 1969, ch. 110, ¶¶ 204 to 279) "was designed

to channel into a single procedure the judicial review of the decisions made by administrative agencies in particular cases." *Naughton*, 58 Ill. 2d at 102.

¶ 37     *Naughton* was followed by the appellate court in *Dvorkin v. Illinois Bell Telephone Co.*, 34 Ill. App. 3d 448 (1975). There, the plaintiff's class action alleged the telephone company had a "policy and practice" of offering lower rates to its officers, directors, and employees in violation of Illinois law and asked that the practice be declared unlawful and enjoined. *Id.* at 449-50. The plaintiff argued he was not required to pursue administrative remedies because a purely legal issue was involved and the outcome was predictable. *Id.* at 456.

¶ 38     The appellate court disagreed, finding the plaintiff must pursue "the requested remedy" from the agency before seeking "relief by original proceedings in equity." *Id.* at 457. The court also rejected the plaintiff's argument that, because the agency had no jurisdiction to entertain class actions, the inherent powers of a court of equity were needed to provide redress. *Id.* ("The commencement of a class action does not automatically invoke the jurisdiction of equity."). Thus, where a plaintiff fails to exhaust administrative remedies and has no individual cause of action, "it necessarily follows that any attempted class action must also fail." *Id.* at 457-58.

¶ 39     Like *Dvorkin*, we find the rationale of *Naughton* applies to the facts in this case. Plaintiff failed to exhaust his administrative remedies in challenging his parking ticket, and there is no class-action exception to the exhaustion requirement. To allow an administrative plaintiff to disregard the process set forth by the legislature and seek review by any means he chooses effectively "eliminate[s] the requirement that administrative remedies be exhausted." *Naughton*, 58 Ill. 2d at 101.

¶ 40     Moreover, alleging a "routine practice" or "systemic failure" does not obviate the need for exhaustion of remedies. Had plaintiff raised his central business district argument in the DOAH and succeeded, he would have had no need for declaratory or injunctive relief. The same can be said of similarly situated plaintiffs, who would have had the same opportunity to challenge their tickets before the DOAH and then on administrative review in the circuit court. Where each individual has an adequate remedy in the administrative process, that remedy cannot be avoided by bundling similar claims in a class action.

¶ 41    Plaintiff's argument that his complaint is not about how the DOAH adjudicates the tickets but how the City issues them is unavailing. While the City may issue the tickets through its code enforcement officers, it has also implemented an administrative process to deal with challenges to those tickets, including a hearing before the DOAH. To simply claim it is the City's actions at issue and thus exhaustion is not required would have the effect of nullifying the administrative process for a whole host of code violations and flood the circuit court with litigation. This was not the legislature's intent in establishing the Administrative Review Law. See *Outcom, Inc. v. Illinois Department of Transportation*, 233 Ill. 2d 324, 333 (2009) ("The Administrative Review Law eliminates the use of *mandamus*, *certiorari*, injunction and other equitable, statutory and common law actions as a means of reviewing agency decisions, thus providing a single uniform method of review.").

¶ 42    On the exhaustion exception issue, the appellate court here focused its analysis on two cases: *Midland Hotel Corp. v. Director of Employment Security*, 282 Ill. App. 3d 312 (1996), and *Board of Education of Chicago v. Board of Trustees of the Public Schools Teachers' Pension & Retirement Fund of Chicago*, 395 Ill. App. 3d 735 (2009).

¶ 43    The City relies on *Midland Hotel*, where the plaintiff employer challenged a decision of the Illinois Department of Employment Security (IDES) that it owed unemployment insurance contributions for certain quarters. *Midland Hotel*, 282 Ill. App. 3d at 313-14. The Director of Employment Security (Director) affirmed the determination and assessment. *Id.* at 314.

¶ 44    The plaintiff filed a complaint for administrative review and, on the same day, filed a class-action complaint for injunction, an accounting, and other relief. *Id.* Several months later, the plaintiff filed an amended complaint, alleging the Director was engaged in a continuing violation of the Unemployment Insurance Act (820 ILCS 405/100 *et seq.* (West 1992)). *Midland Hotel*, 282 Ill. App. 3d at 314. The circuit court affirmed the Director's decision on administrative review and later dismissed the class action. *Id.* at 314-15.

¶ 45    On appeal, the employer argued that any administrative remedy would have been inadequate, as the administrative hearing could not provide injunctive relief, an accounting, or refunds. *Id.* at 320. Also, the employer argued that, without a

class action, the IDES would be able to continue its ongoing illegal and invalid practices. *Id.*

¶ 46    The appellate court found the circuit court properly dismissed the employer's amended class-action complaint on the basis that it was an improper collateral attack on the final administrative review decision and the employer failed to exhaust its administrative remedies. *Id.* at 316. The court stated administrative remedies were not inadequate, as the employer could have raised its concerns within an administrative review action. *Id.* at 320.

¶ 47    The appellate court noted "[a]n administrative review judgment cannot be avoided by bringing a subsequent class action." *Id.* at 321. Instead, a class action would only be appropriate after the employer successfully challenged the IDES order on administrative review. *Id.* Thereafter, when a judicial determination was entered against the IDES, a petition for injunction against IDES could then be heard. *Id.*

¶ 48    The appellate court here found *Board of Education* instructive. 2022 IL App (1st) 200957, ¶ 55. There, the board of education filed a complaint in the circuit court challenging the method by which the trustees calculated average salaries for certain teachers in relation to the Illinois Pension Code (40 ILCS 5/1-101 *et seq.* (West 2006)). *Board of Education*, 395 Ill. App. 3d at 737. The complaint sought a declaratory judgment, an accounting, and an injunction. *Id.* The circuit court dismissed the board's complaint and denied its request to file an amended complaint. *Id.* at 738.

¶ 49    On appeal, the board argued the case did not involve an administrative decision but challenged a general policy that went unchallenged in the underlying pension proceedings. *Id.* at 741. The appellate court held the trustees' decisions were not subject to administrative review because (1) they involved a "systemic miscalculation" that fell outside the definition of an administrative decision under the review law and (2) the board was a third party to the decisions and thus had no interest in or standing to seek review of individual decisions before the board. *Id.* at 744-45.

¶ 50    In considering the reach of *Board of Education* and similar cases, the appellate court in *De Jesus v. Policemen's Annuity & Benefit Fund of Chicago*, 2019 IL App

(1st) 190486, ¶ 26, found that, "when pension or disability benefits are at issue, a party may challenge a pension board's action without timely initiating administrative review under two limited circumstances." "The first circumstance is when the party challenging the miscalculations was not a party to the underlying administrative action, *i.e.*, a city and not a pensioner, and the challenge is to a systematic miscalculation, not merely an individual miscalculation." *Id.*

¶ 51    In *De Jesus*, the plaintiffs argued *Board of Education* stood for the proposition that systematic miscalculations are not litigated via the Administrative Review Law. *Id.* ¶ 27. But the appellate court found that too broad of a reading, especially with *Board of Education* "expressly limiting the applicability of systematic miscalculation claims to litigation where the dispute involves a nonparty to the underlying administrative proceedings who would 'not have an interest in and standing to seek the review of each individual case that comes before the pension board.' " *Id.* (quoting *Board of Education*, 395 Ill. App. 3d at 743). The appellate court in *De Jesus* went on to note the second limited circumstance occurs when "the party challenging the systematic miscalculations can point to a specific rule, regulation, standard, or statement of policy from the pension board itself." *Id.*

¶ 52    While neither *Midland* nor *Board of Education* is directly on point with the facts of this case, we find *Midland* more in line with our exhaustion jurisprudence. Like in *Midland*, plaintiff was required to successfully challenge his parking ticket in the DOAH and on administrative review before he could seek an injunction. In contrast to *Board of Education*, which involved the impact on an affected third party in a pension case, plaintiff here had the immediate opportunity to challenge his individual ticket before the DOAH and the circuit court within the confines of the Administrative Review Law. This he failed to do, and he cannot circumvent the administrative review process with his class-action complaint. Moreover, he has not alleged a specific rule, regulation, standard, or statement of policy from the City or the DOAH as to issuing or ratifying erroneous central business district tickets that would lead us to relax the requirements of the exhaustion doctrine.

¶ 53    Because plaintiff failed to exhaust his administrative remedies and no exceptions to the exhaustion doctrine apply here, we find the appellate court erred in reversing the circuit court's dismissal of plaintiff's complaint with prejudice. Based on this finding, we need not address the City's argument that the complaint

should have been dismissed based on the voluntary payment doctrine.

¶ 54                                    CONCLUSION

¶ 55       For the foregoing reasons, we reverse the judgment of the appellate court and affirm the judgment of the circuit court.


¶ 56       Appellate court judgment reversed.

¶ 57       Circuit court judgment affirmed.