2024 IL App (2d) 230173
No. 2-23-0173
Opinion filed May 30, 2024

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| PLAINTIFF 1, PLAINTIFF 2, and PLAINTIFF 3, | ) ) | Appeal from the Circuit Court of Lake County. |
| | ) | |
| Plaintiffs-Appellants, | ) | |
| v. | ) | No. 22-LA-540 |
| | ) | |
| THE BOARD OF EDUCATION OF LAKE FOREST HIGH SCHOOL DISTRICT 115, | ) ) ) | Honorable Charles W. Smith, |
| Defendant-Appellee. | ) | Judge, Presiding. |

_____

JUSTICE SCHOSTOK delivered the judgment of the court, with opinion.
Justices Hutchinson and Birkett concurred in the judgment and opinion.

**OPINION**

¶ 1    The plaintiffs, who have taken pains to shield their identities, sued the defendant, the Board of Education of Lake Forest High School District 115 (Board), for disclosing private information and details of their settlement of a prior lawsuit against the Board despite a confidentiality provision in that settlement agreement (Agreement). In April 2023, the trial court dismissed the suit pursuant to section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2022)). The plaintiffs appeal. We affirm in part, reverse in part, and remand for further proceedings.

¶ 2                                    I. BACKGROUND

¶ 3      The following facts are drawn from the exhibits and the allegations of the complaint, which, at this point, we must take as true. *Cahokia Unit School District No. 187 v. Pritzker*, 2021 IL 126212, ¶ 24.

¶ 4      In 2016, the plaintiffs—a student in a school governed by the Board (Student Plaintiff) and the Student Plaintiff's parents—sued the defendant, alleging that the defendant had denied the Student Plaintiff a free and appropriate public education by failing to provide the Student Plaintiff with necessary accommodations for the Student Plaintiff's disability (Underlying Suit). When it proceeded to federal court, the suit was filed using the plaintiffs' initials only under Federal Rule of Civil Procedure 5.2(a)(3) (Fed. R. Civ. P. 5.2(a)(3) (requiring the use of initials to refer to minors); see Steven S. Gensler, Fed. R. Civ. P. 5.2(a)(3), Rules and Commentary (Feb. 2024 Update) (noting that parents are often permitted to file using initials only as well, to further protect minors' identities)). According to the complaint in the present case, the Underlying Suit involved disclosures of the Student Plaintiff's "physical, emotional, and psychological disabilities in vivid detail, including reports, and expert witness testimony."

¶ 5      In the spring of 2022, the parties agreed to settle the Underlying Suit. In return for the defendant's payment of a certain sum, the plaintiffs agreed to dismiss all of the ongoing proceedings against the defendant. The Agreement was prepared, and it includes, among its terms, the following provisions:

> "3. Confidentiality. This Agreement and any and all matters referred to herein or concerning this Agreement shall be regarded as strictly confidential and not to be disclosed to third parties, except to a Party's accountant, auditor, attorney, or as required by law. Nothing herein shall prevent any Party from responding to a lawful subpoena, reporting to

IRS, complying with any other legal obligation, or acting in an action alleging breach or enforcing the terms of this Agreement.

* * *

5. Mutual Non-Disparagement; Party Statements. The Parties agree that they shall not make any disparaging or derogatory statements concerning each other or the Released Parties and/or any matters encompassed in the Lawsuit that may have an adverse effect on the Released Parties' reputation or business interests; provided, however, that nothing in this Section shall prevent either Party from testifying truthfully in connection with any litigation, arbitration or administrative proceeding when compelled by subpoena, regulation or court order to do so."

The Agreement identifies the parties by their full names and listed the district court docket number. The complaint alleges that, armed with this information, anyone could access the full court file of the Underlying Suit.

¶ 6       Despite the Agreement's terms, both prior to and after the execution of the Agreement, the defendant published the Agreement on a variety of dates and in several ways. In August 2022, after the plaintiffs learned of some of the publications of the Agreement, their attorney requested documents related to the Agreement pursuant to the Freedom of Information Act (FOIA) (5 ILCS 140/1 *et seq.* (West 2020)). The plaintiffs include, as exhibits to the complaint, several of the responsive documents, which the defendant partially redacted prior to producing them. The complaint alleges the following disclosures of the Agreement.

¶ 7       On June 2, 2022, at about noon, Tiana Adams, the executive assistant to the defendant's superintendent and clerk of the Board, sent an e-mail titled "For Review – D115 Agenda 06.14.22." The e-mail sought approval of an attached agenda before it was sent to "Board presidents." The plaintiffs allege that, upon information and belief, the attachment (which was not included in the

FOIA response) related to the upcoming June 14, 2022, Board meeting at which the Agreement would be presented for approval, and it included a copy of the complete and unredacted Agreement.

¶ 8    That evening, Deputy Superintendent Jeff McHugh responded twice to Adams's e-mail, once at 8:29 p.m. and again at 10:35 p.m. In his first e-mail, McHugh simply stated, "Looks good to me." (Any earlier attachment was not included in the FOIA response.) In his second e-mail, McHugh included his own attachment (also not produced in the FOIA response), which was titled "Lake Forest HSD 115 v. ISBE and [redacted] Settlement Agreement (3026212.1).docx." In this second e-mail, McHugh said that he was "just confirming that the first action time [*sic*] is regarding the attached document [redacted] settlement" and that "[w]e wanted to add this as an action item" but he was not sure whether that was what the first item was.

¶ 9    On June 10, 2022, at about 3:21 p.m., "District 115 Communications" e-mailed to unknown members of the public a notice of the June 14, 2022, school board meeting. The e-mail contained a link to an online webpage that was publicly accessible and contained further links to the agenda for the meeting and to a complete, unredacted copy of the Agreement. The link to the Agreement permitted members of the public to view, copy, download, print, circulate, and otherwise possess the unredacted Agreement, including the plaintiffs' full names and the docket number of the Underlying Suit.

¶ 10    About an hour after the posting of this meeting notice, someone e-mailed back to "District 115 Communications," saying, "you should take out or redact the actual settlement with the [redacted] Family that is accessible through the meeting agenda. I would think this is a violation of privacy and potential breach of confidentiality and piercing attorney client privilege."

¶ 11    At 5:21 p.m., two hours after the original e-mail notice of the meeting, someone e-mailed the defendant's superintendent, Matt Montgomery, with a similar message: "I am not sure you are

aware but this settlement is accessible on the 6/14/22 District 115 School Board meeting agenda. I think this should be private or at least redacted?" This second person included a link to a Google drive location that, upon information and belief, belonged to the defendant and contained an unredacted copy of the Agreement. About an hour later, the same person e-mailed other agents of the defendant, including Erin Lenart, the principal of Lake Forest High School, saying, "I am not sure you are aware but the 6/14/2022 Dist 115 Board meeting Agenda has the link to a Settlement agreement that should either be private or at a minimum redacted. I sent an email to Dr. Montgomery too but received an automated out of town email response." Lenart forwarded the message to McHugh. At 6:57 p.m., McHugh e-mailed the person, stating without elaboration that "[i]t's been corrected" and thanking the person for the "heads up." At 7:55 p.m., Montgomery also e-mailed the person, expressing thanks for "bringing this to my attention."

¶ 12    At the school board meeting on June 14, 2022, the plaintiffs' names were not mentioned during the public discussion of the agenda item approving the Agreement. The plaintiffs assert that they did not know whether the meeting agenda and materials had been redacted or otherwise restricted by the time of the meeting. The following day, June 15, the plaintiffs signed the Agreement. The plaintiffs allege that they subsequently complied with all of the terms of the Agreement.

¶ 13    According to the complaint, disclosures of the unredacted Agreement continued after it was executed by the defendant. On June 15, 2022, Adams e-mailed a dozen of the defendant's agents a list of action items approved at the meeting that included a live link to the Agreement. The e-mail did not contain any cautionary language about the confidentiality of the Agreement or of the plaintiffs' names.

¶ 14    On June 19, 2022, Jenny Sterpin, the executive director of Special Education, Compliance and Grant Management for the defendant, shared a Google Drive folder with the defendant's

comptroller, Katie Labuhn. The folder contained the Agreement, a check request (with the plaintiff parents' names), and the amount of the check request. The cover e-mail from Sterpin included the Student Plaintiff's name. (Although these names were redacted in the later FOIA response, it is clear that they were initially included.) Again, the e-mail did not contain any cautionary language about the confidentiality of the Agreement or of the plaintiffs' names. The plaintiffs allege upon information and belief that the folder was not protected in any way and could be publicly accessed.

¶ 15    The next day, June 20, 2022, Labuhn responded to Sterpin's e-mail, saying that someone named Joey did not need to approve the check request and that the check was approved.

¶ 16    On June 21, 2022, Tanya Dornik, one of the defendant's agents, e-mailed the defendant's director of facilities on an unrelated matter that had also been on the agenda of the June 14, 2022, Board meeting. The e-mail included a list of action items for that meeting that contained a live link to the Agreement. Once again, there was no cautionary language about the confidentiality of the Agreement or of the plaintiffs' names.

¶ 17    On June 29, 2022, Dornik forwarded Adams's June 15, 2022, e-mail to Michael Sanchez.

¶ 18    On July 21, 2022, Sterpin and Labuhn again communicated via e-mail about the settlement check, using the plaintiffs' names.

¶ 19    In October 2022, after receiving the defendant's response to their attorney's FOIA request, the plaintiffs filed this suit. They asserted four claims: public disclosure of private facts (count I), breach of contract (count II), intentional infliction of emotional distress (count III), and negligent infliction of emotional distress (count IV).

¶ 20    The defendant filed a combined motion to dismiss under section 2-619.1 of the Code (735 ILCS 5/2-619.1 (West 2022)), seeking dismissal under both sections 2-615 (*id.* § 2-615) (asserting failure to state a claim) and 2-619 (*id.* § 2-619) (raising the affirmative defense that counts I, III, and IV were precluded by the Local Governmental and Governmental Employees Tort Immunity

Act (Act) (745 ILCS 10/2-107 (West 2022)). After briefing and oral argument, the trial court issued an order granting the motion and dismissing all of the plaintiffs' claims with prejudice "for the reasons stated on the record." In its oral ruling, the trial court said that it was "not reaching the immunity issue" because it was dismissing the complaint on "other grounds." The trial court did not identify any particular insufficiencies in how the claims were pled. It focused instead on policy concerns, stating that Illinois law disfavors the use of pseudonyms except to shield the privacy of a crime victim or a minor, and the Student Plaintiff was no longer a minor. Further, there was a strong public policy in favor of allowing the public to know how tax revenues were spent. The trial court stated that, although it recognized that the plaintiffs did not want the Student Plaintiff's name and disability known, court proceedings were generally public, and the plaintiffs were seeking damages that were public funds. The trial court also found that the Agreement was not in effect when the publication occurred. The plaintiffs filed a timely appeal.

¶ 21                              II. ANALYSIS

¶ 22    On appeal, the plaintiffs contend that their complaint stated valid claims and thus should not have been dismissed. The defendant argues to the contrary and adds that in any event the tort claims were barred by the Act. The plaintiffs respond that the Act did not immunize the defendant against their tort claims.

¶ 23    "A motion to dismiss under section 2-615 challenges the legal sufficiency of the plaintiff's claim, while a motion to dismiss under section 2-619 admits the legal sufficiency of the claim but asserts defenses or defects outside the pleading to defeat the claim." *Cahokia Unit School District No. 187*, 2021 IL 126212, ¶ 23. "When ruling on a motion to dismiss under either section 2-615 or section 2-619, a court must construe the pleadings and supporting documents in the light most favorable to the nonmoving party," taking as true "all well-pleaded facts and all reasonable inferences from those facts." *Id.* ¶ 24. We review the dismissal of a complaint pursuant to either

section *de novo*. *Id.* A claim should not be dismissed on the pleadings "unless it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to recovery." (Internal quotation marks omitted.) *Nyhammer v. Basta*, 2022 IL 128354, ¶ 23 (as to section 2-615 motions); see *Pinkston v. City of Chicago*, 2023 IL 128575, ¶ 22 (same, for section 2-619 motions).

¶ 24          A. Local Governmental and Governmental Employees Tort Immunity Act

¶ 25     We begin by addressing the applicability of the Act to the plaintiffs' tort claims in counts I, III, and IV. Although the trial court declined to reach this issue, preferring to base its dismissal on other grounds, we are not constrained by its decision. See *Ultsch v. Illinois Municipal Retirement Fund*, 226 Ill. 2d 169, 192 (2007) ("[A] reviewing court can uphold the decision of the circuit court on any grounds which are called for by the record regardless of whether the circuit court relied on the grounds and regardless of whether the circuit court's reasoning was correct.").

¶ 26     The defendant argues that section 2-107 of the Act (745 ILCS 10/2-107 (West 2022)) immunizes it from the plaintiffs' claims for public disclosure of private facts, intentional infliction of emotional distress, and negligent infliction of emotional distress, because all three claims are founded on the same core facts relating to the defendant's "provision of information" about the plaintiffs and the Agreement to members of the public. Section 2-107 states: "A local public entity is not liable for injury caused by any action of its employees that is libelous or slanderous or *for the provision of information* either orally, in writing, by computer or any other electronic transmission, or in a book or other form of library material." (Emphasis added.) *Id.* The plaintiffs respond that no court has read the phrase "provision of information" as broadly as the defendant urges, and to do so would be counter to the legislature's intent.

¶ 27     The applicability of section 2-107 to the plaintiffs' tort claims presents a question of statutory interpretation. In construing a statute, our task is to "ascertain and give effect to the intent of the legislature." *Sandholm v. Kuecker*, 2012 IL 111443, ¶ 41. The best indicator of the

legislature's intent is the plain language of the statute. *Id.* The statutory language must be afforded its plain and ordinary meaning, and where the language is clear and unambiguous we must apply the statute without resort to further aids of statutory construction. *In re Michael D.*, 2015 IL 119178, ¶ 9. We will not depart from the plain language of a statute by reading into it exceptions, limitations, or conditions that conflict with the express legislative intent. *Id.*

¶ 28     Examining the language of section 2-107, it is clear that it applies to the plaintiffs' tort claims, as the defendant's disclosure of the plaintiffs' confidential personal information[1] falls squarely within the plain meaning of "provision of information." That disclosure is the gravamen of all three of the plaintiffs' tort claims, whether they focus on the disclosure itself (as in the public disclosure of private facts claim in count I) or the emotional harm that flowed from that disclosure (as in the claims in counts III and IV for intentional and negligent infliction of emotional distress). Thus, the plain language of section 2-107 immunizes the defendant from the claims raised in counts I, III and IV.

¶ 29     The plaintiffs protest that this is an extraordinarily broad immunity that would permit school districts and other local public entities to freely disseminate all of the highly sensitive and private information they may be in possession of, and they contend that the legislature surely could not have intended this result. But the language of section 2-107 suggests that it is deliberately

---

[1]For the purposes of this analysis, we accept as true the plaintiffs' allegations that the defendant's publication of the plaintiffs' full names and the docket number of the Underlying Suit permitted members of the public to access highly personal health and school records contained or referenced in the Underlying Suit record. We also provisionally accept (without actually adopting) the plaintiffs' position that sharing this means of accessing confidential information was the same thing as sharing the information itself.

broad. For instance, it also immunizes public entities from defamation claims. See 745 ILCS 10/2-107 (West 2022) (granting immunity "for injury caused by any action of its employees that is libelous or slanderous"). The wrong committed through such intentional and malicious defamation is, arguably, of even greater magnitude than the wrong alleged here, sharing private information, and yet it is clearly protected under section 2-107.

¶ 30    The plaintiffs have produced no authority suggesting that the phrase "provision of information" means something other than the ordinary meaning of those words. Rather, the limited case law discussing the meaning of this statutory phrase indicates that it should be read broadly. See *Ramos v. City of Peru*, 333 Ill. App. 3d 75, 80 (2002) (affirming dismissal of false light invasion of privacy claim pursuant to section 2-107); *Goldberg v. Brooks*, 409 Ill. App. 3d 106, 111 (2011) ("provision of information," as used in 745 ILCS 10/2-210 (West 2020)—a companion provision that focuses on individual public employees rather than public entities—provides "broad protection to public employees acting within the scope of their employment"); see also *Doe-3 v. McLean County Unit District No. 5 Board of Directors*, 2012 IL 112479, ¶ 97 (Garman, J., concurring in part and dissenting in part) (the language of section 2-107 "is a clear statement of absolute immunity for public entities for the provision of information that results in an injury"); *Thompson v. Board of Education Township High School District 113*, 2016 IL App (2d) 150226-U, ¶¶ 45-49 (the immunity for provision of information granted by section 2-107 is "not subject to common law exceptions" and matters within the scope of this provision "are absolutely immune from challenge in the courts"; affirming the dismissal of claims for unauthorized release of information, public disclosure of private facts, and the disclosure or re-disclosure of confidential

communications)[2]; *cf. Wright-Young v. Chicago State University*, 2019 IL App (1st) 181073, ¶ 73 (portions of the Act immunizing the "provision of information" did not immunize the *failure* to provide information); *Lyons Township ex rel. Kielczynski v. Village of Indian Head Park*, 2017 IL App (1st) 161574, ¶ 29 (section 2-107 did not bar *qui tam* suit regarding village's submission of false time sheets and tickets to township).

¶ 31    In construing a statute, we may consider "the reason for the statute, the problems it seeks to remedy, the purposes to be achieved, and the consequences of interpreting the statute one way or another." *Sperl v. Henry*, 2018 IL 123132, ¶ 23. The purpose of the Act is "to prevent the dissipation of public funds on damage awards in tort cases." *Monson v. City of Danville*, 2018 IL 122486, ¶ 15. That purpose is supported by giving meaning to the broad—but clear—language chosen by the legislature in section 2-107. See *Village of Bloomingdale v. CDG Enterprises, Inc.*, 196 Ill. 2d 484, 493 (2001) (where the relevant provisions of the Act did not contain an exception to immunity for corrupt or malicious motives, the court would not insert one); *Kraft, Inc. v. Edgar*, 138 Ill. 2d 178, 189 (1990) ("Legislative intent is best evidenced by the language used by the legislature, and where an enactment is clear and unambiguous a court is not at liberty to depart from the plain language and meaning of the statute by reading into it exceptions, limitations or conditions that the legislature did not express."). As the plain language of section 2-107 grants immunity to the defendant against tort claims based on its release of the plaintiffs' personal information, we affirm the trial court's dismissal of the plaintiffs' claims in counts I, III, and IV.

---

[2]Neither *Doe-3* nor *Thompson* is precedential. The cited language from *Doe-3* is from a partial concurrence and partial dissent, not the majority, and *Thompson* is an unpublished order pursuant to Illinois Supreme Court Rule 23(b) (eff. Feb. 1, 2023). However, we may consider the reasoning of these cases. *Habdab, LLC v. County of Lake*, 2023 IL App (2d) 230006, ¶ 38 n.5.

¶ 32                    B. Breach of Contract Claim

¶ 33    Having upheld the dismissal of counts I, III, and IV, we turn to count II, the plaintiffs' claim that, by disseminating the full, unredacted Agreement, the defendant violated the confidentiality and nondisparagement provisions of that Agreement. The trial court dismissed this claim on the basis that, when the defendant first published the confidential information on June 2, 2022, the Agreement was not yet in effect.

¶ 34    The trial court was correct insofar as it found that, under the facts alleged in the complaint, the Agreement did not come into being until June 15, 2022, when the plaintiffs signed it following approval of the Agreement at the school board meeting on June 14, 2022. For a contract to come into being, there must be an offer, an acceptance of that offer, and consideration. *Melena v. Anheuser-Busch, Inc.*, 219 Ill. 2d 135, 151 (2006). Pursuant to section 10-7 of the School Code (105 ILCS 5/10-7 (West 2020)), any contract involving the expenditure of public funds requires approval at a public meeting, and that public meeting and approval did not take place until June 14, 2022. Further, the Agreement itself stated that its effective date was the latest date on which a party signed it. The defendant's authorized agent signed the Agreement on June 14, 2022, and the plaintiffs signed it the following day. Thus, the Agreement was not effective until June 15, 2022.

¶ 35    The plaintiffs contend vigorously that the defendant's breaches of the confidentiality provisions prior to its effective date "undermined the spirit of the agreement," violated the parties' agreement in principle, and should be considered breaches of the Agreement, especially as the plaintiffs fully performed their duties under the Agreement. They also contend that the defendant should be held liable because its pre-Agreement breaches of confidentiality caused repercussions that continued after the Agreement's effective date and essentially rendered the defendant's own performance of its confidentiality obligations impossible. However, they cite no case law supporting these contentions. Where a party does not offer meaningful authority in support of its

argument, the argument is forfeited. Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020); *People ex rel. Illinois Department of Labor v. E.R.H. Enterprises, Inc.*, 2013 IL 115106, ¶ 56. We affirm the trial court's dismissal of count II as to the defendant's conduct that occurred before the effective date of the Agreement.

¶ 36    The plaintiffs also alleged that the defendant breached the Agreement through its disclosures *after* the Agreement's effective date. As to these alleged breaches, the defendant argues that the disclosures were made solely to personnel who were employees or agents, and thus they were not disclosures to "third parties" as prohibited by the terms of the Agreement. However, this is a factual assertion. At this stage in the litigation, we must consider only the facts alleged in the complaint and clearly established by the exhibits to the complaint. *Lake Point Tower Condominium Ass'n v. Waller*, 2017 IL App (1st) 162072, ¶ 10 ("courts may not rely on matters outside the complaint in considering a section 2-615 motion"). Although the plaintiffs listed persons to whom they alleged the defendant sent confidential information, they nowhere alleged that this was an exhaustive list of such persons, or that these persons did not in turn share the e-mails they received with others. Further, although the exhibits disclose that many of the recipients had e-mail addresses that appear to be affiliated with the defendant, the e-mail address of at least one recipient, Michael Sanchez, is not shown. Thus, as to the disclosures that occurred after the Agreement's effective date, the defendant has not shown that count II fails to state a claim. Accordingly, we reverse the trial court's judgment dismissing this portion of count II.

¶ 37    In so doing, we recognize the validity of the trial court's concern for public policy favoring the disclosure of how public funds are spent. However, balancing that concern against other public policy interests such as the protection of confidential personal information is a task for the legislature. Our decision here is based on our own task, that of faithfully and fairly interpreting the law.

¶ 38                                  III. CONCLUSION

¶ 39    For the reasons given here, the judgment of the circuit court of Lake County is reversed as to the portion of count II alleging that the defendant breached the Agreement by disclosing that Agreement and other personal confidential information after the effective date of the Agreement, and the cause is remanded for further proceedings. In all other respects, the judgment is affirmed.

¶ 40    Affirmed in part and reversed in part.

¶ 41    Cause remanded.

*Plaintiff 1 v. Board of Education of Lake Forest High School District 115,*
**2024 IL App (2d) 230173**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Lake County, No. 22-LA-540; the Hon. Charles W. Smith, Judge, presiding. |
| **Attorneys for Appellant:** | William E. Meyer Jr., Lema Khorshid, Vincent P. Formica Jr., and Lauren Miller, of Fuksa Khorshid, LLC, of Chicago, for appellants. |
| **Attorneys for Appellee:** | James A. Petrungaro and Jared M. Costanzo, of Franczek P.C., of Chicago, for appellee. |