2025 IL App (1st) 240849-U

SECOND DIVISION
August 26, 2025

No. 1-24-0849

**NOTICE**: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| MARIANNE G. DWYER, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County |
| | ) | |
| v. | ) | 23 CH 10069 |
| | ) | |
| THE CITY OF CHICAGO, a municipal corporation, | ) | Honorable |
| | ) | Neil H. Cohen, |
| Defendant-Appellee. | ) | Judge Presiding |

_____

JUSTICE ELLIS delivered the judgment of the court.
Justices McBride and Howse concurred in the judgment.

**ORDER**

¶ 1    *Held*: Affirmed. Class-action lawsuit was properly dismissed for failure to exhaust administrative remedies.

¶ 2    Plaintiff Marianne Dwyer filed this class-action complaint against the City of Chicago for allegedly issuing speeding tickets in violation of state law. The complaint alleges that the City established a one-block "park safety zone" on the 900 block of North Clark Avenue, the effect of which reduced the speed limit from 30 miles per hour to 25. But the City's automated speed-enforcement camera in that zone was allegedly too close to the sign that posted the reduced speed limit, in violation of our Vehicle Code's requirement that a sign reducing speed give at

least 500 feet of notice before an automated camera can catch speeders. See 625 ILCS 5/11-604(b) (West 2022).

¶ 3      Dwyer received four speeding tickets from the allegedly illegally positioned camera. But she never challenged those tickets administratively before the City's Department of Administrative Hearings ("DOAH"). Instead, she filed this suit, seeking to join, as a class, all other individuals who received citations from this allegedly illegal automated camera before the problem was fixed. She seeks a declaration that all these citations are invalid and a return of the fines paid by her and the purported class members.

¶ 4      The circuit court dismissed the complaint for failure to exhaust administrative remedies. We agree with the circuit court and affirm.

¶ 5      Our review of a complaint's dismissal is *de novo*. *Pinkston v. City of Chicago*, 2023 IL 128575, ¶ 25. We take the allegations of the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Id*.

¶ 6      By state law, the City may set up an administrative adjudication process for "automated speed enforcement system violations." 625 ILCS 5/11-208.3(a) (West 2022). The City has done so by ordinance. See Municipal Code of Chicago, § 9-100-050 (2022). The notice of speeding violation—the ticket or citation—informs recipients of their right to contest the violation by administrative adjudication. *Id*. § 9-100-050(a). One of the bases for disputing a ticket is "that the facts alleged in the violation notice are inconsistent or do not support a finding that the specified regulation was violated." *Id*. § 9-100- 060(a)(5). The citations Dwyer received, attached to the complaint, advised her of this very thing.

¶ 7      Review of final administrative decisions is subject to the Administrative Review Law. 625 ILCS 5/11-208.3(d) (West 2022). So anyone aggrieved by a final decision of the

administrative tribunal (here, DOAH) may seek judicial review of that decision. See 735 ILCS 5/3-103 (West 2022); *Gernaga v. City of Chicago*, 2015 IL App (1st) 130272, ¶ 1 (reviewing DOAH's finding of red-light camera violation).

¶ 8    But that route—completing the administrative process first and then, if necessary, seeking judicial review of the administrative decision—is the *only* way an individual wishing to challenge the citation may proceed. If an aggrieved party does *not* follow the dictates of the Administrative Review Law, she is "barred from obtaining judicial review of such administrative decision" otherwise. 735 ILCS 5/3-102 (West 2022). That requirement is a statutory version of the common-law doctrine of exhaustion of remedies. See *Pinkston*, 2023 IL 128575, ¶ 25 ("the common-law doctrine of exhaustion is incorporated in the Administrative Review Law.").

¶ 9    Simply put, subject to certain exceptions, an aggrieved individual must first exhaust any remedies within the administrative tribunal before seeking judicial relief, and the failure to exhaust is fatal to the plaintiff's lawsuit. *Id*. ¶ 24. The exhaustion requirement allows the administrative tribunal to gather the facts and utilize its expertise while giving the charged individual the opportunity to obtain relief that would make judicial relief unnecessary. *Id*.

¶ 10    To be sure, the law recognizes limited exceptions to the doctrine, by which we will permit a litigant to skip the administrative process and go straight to court:

" '[(1)] where a statute, ordinance or rule is attacked as unconstitutional on its face [citations], [(2)] where multiple administrative remedies exist and at least one is exhausted [citations], [(3)] where the agency cannot provide an adequate remedy or where it is patently futile to seek relief before the agency [citations], [(4)] where no issues of fact are presented or agency expertise is not involved [citations], [(5)] where irreparable harm will result from further pursuit of administrative remedies [citations], or

3

[(6)] where the agency's jurisdiction is attacked because it is not authorized by statute [citation].' " *Id*. ¶ 26 (quoting *Castaneda v. Illinois Human Rights Comm'n*, 132 Ill. 2d 304, 308-09 (1989).

¶ 11    Dwyer makes no real attempt to deny that the exhaustion doctrine applies here. As far as exceptions, she argues only that the "fair" remedy would be for the City "to contact the motorists who received citations and notify them that those citations were void, and to contact the motorists that paid and return their money and cease collection." It is unfair, she claims, that she and other like citizens are compelled to "take ½ day off from work, pay for parking and attend [an] administrative hearing." She also suggests in her brief (though not in her complaint below) that other less-affluent neighborhoods in the City receive discounts and debt-forgiveness plans for speeding tickets that people living in her neighborhood do not.

¶ 12    No doubt, challenging an administrative citation requires some inconvenience and burden. And in a perfect world, we would all celebrate if municipalities took it upon themselves to voluntarily admit mistakes like the one alleged here and send out refunds. (That assumes the City actually committed this error with its placement of the automated camera; at the dismissal stage, the parties and the court *presume* the truth of those allegations. See *Bjork v. O'Meara*, 2013 IL 114044, ¶ 21. Contrary to Dwyer's claim, the City has not actually admitted this error as a matter of fact in the litigation.)

¶ 13    Regardless, Dwyer's argument does not fit within the limited exceptions to exhaustion. At best, we might place it under the third exception, that the administrative remedy was inadequate. See *Pinkston*, 2023 IL 128575, ¶ 26. We echo the City in responding that, if Dwyer is correct that the automated speed camera was less than 500 feet from the sign posting the reduced speed limit, then she could establish a violation of state law. 625 ILCS 5/11-604(b)

(West 2022). And with it, a remedy: any evidence from that improperly positioned camera would be "inadmissible in any prosecution for speeding." *Id*. It is hard to imagine that Dwyer would be anything *but* successful in challenging her speeding tickets before DOAH if the evidence from the automated speed cameras were deemed inadmissible. Her remedy was more than adequate.

¶ 14     This case is strikingly similar to our supreme court's decision in *Pinkston*, 2023 IL 128575. Pinkston filed a class-action lawsuit against the City, claiming the City engaged in a routine practice of issuing the wrong parking-meter citations; the City issued more expensive "central business district" citations to vehicles that were not parked in that district. *Id*. ¶¶ 1-8. Pinkston sought a declaration that the citations were invalid, injunctive relief to stop the City's practice, and a return of money illegally obtained by the City. *Id*. ¶ 8.

¶ 15     Pinkston argued that his administrative remedy was inadequate, as his complaint was not against the DOAH proceedings themselves; it was against the City and its routine practice of issuing improper citations that forced him (and the class) to litigate before DOAH. A divided appellate court agreed that his administrative remedy was inadequate, as the Administrative Review Law did not provide for declaratory, injunctive, or monetary relief. *Pinkston v. City of Chicago*, 2022 IL App (1st) 200957, ¶ 62, *reversed*, 2023 IL 128575, ¶ 62.

¶ 16     Our supreme court held that the complaint was properly dismissed for failure to exhaust administrative remedies. *Pinkston*, 2023 IL 128575, ¶ 53. The court found the administrative remedy adequate, as Pinkston could have prevailed before DOAH had he demonstrated that he was parked in a non-central business district location. *Id*. ¶¶ 31-33. The court cited the long-standing principle that "an aggrieved party cannot circumvent administrative remedies 'by a class action for declaratory judgment, injunction or other relief.' " *Id*. ¶ 34 (quoting *People ex rel. Naughton v. Swank*, 58 Ill. 2d 95, 102 (1974)). The purpose of the Administrative Review

Law is " 'to channel into a single procedure the judicial review of the decisions made by administrative agencies in particular cases.' " *Id*. ¶ 36 (quoting *Naughton*, 58 Ill. 2d at 102).

¶ 17    Whatever the merits Dwyer may cite of using a class-action suit to settle the claims of many individuals all at once, she cannot avoid the holding in *Pinkston*. She argues only that this case "differs" from *Pinkston* "because there is a pool of money illegally collected, a group of citizens who didn't pay facing draconian measures to collect more money such as booting, towing and seizure of vehicles and the City's admission that a class representative is proper to remedy those wrongs or potential wrongs illegally done by the City."

¶ 18    First, as already noted, the City did not admit any of the class allegations other than presuming all allegations to be true at the dismissal stage. Regardless, nothing in Dwyer's argument changes the clear holding in *Pinkston* that her administrative remedy was adequate. If litigants were permitted to bypass administrative remedies and run straight to court, the process put together by the legislature, and repeatedly approved by our supreme court at the common law, could unravel to the point of oblivion.

¶ 19    We fully recognize that Dwyer is alleging not only that her tickets were invalid but that an entire class of individuals received improper citations for the very same reason—the improper placement of the automated camera. And we understand why it might be tempting to view this suit as an economical way to settle all such matters in one proceeding. But that is no different than Pinkston's attempt to represent an entire class of people who had the same defense to their citations—they were not parked in the central business district as claimed on the ticket. If Pinkston's suit was barred by the exhaustion doctrine, then so must this one. The circuit court properly dismissed the complaint.

¶ 20    Affirmed.